## STATE OF MICHIGAN,

### In July Term, 1846.

PRESENT :

HON. EPAPHRODITUS RANSOM, CHIEF JUSTICE.
HON. CHARLES W. WHIPPLE,
HON. DANIEL GOODWIN,  } JUSTICES.
HON. WARNER WING,

2d 379
94 254

## THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS AND MECHANICS' BANK OF MICHIGAN *v.* JAMES KINGSLEY.

Assumpsit by the endorsee against the endorser of a promissory note. Plea that the defendant endorsed the note for the accommodation of the maker, of which the plaintiff had notice; and that the plaintiff had recovered judgment upon it, against the maker, on which execution had been issued, and levied upon goods of the maker sufficient to satisfy the same. *Held*, on demurrer, that the plea was a good bar to the action.*

CASE reserved from Washtenaw Circuit Court. Assumpsit upon a promissory note, made by William R. Thompson and Daniel B. Brown, payable to the order of James Kingsley, the defendant, and by him endorsed to the plaintiffs.

The defendant plead specially in bar, that he endorsed the note for the accommodation of the makers, without consideration, and that the plaintiffs had notice thereof;

* See *Spafford* v. *Beach,* ante, 153.

that, on the 28th of October, 1837, the plaintiffs commenced an action on the note, against the makers, in the Washtenaw circuit court, and, on the 11th of May, 1838, recovered a judgment thereon; that, on the 8th of June thereafter, they sued out a *fi. fa.* on the judgment, &c., and on the 16th day of July, delivered it to the sheriff of Washtenaw county; and that on the 4th of August in the same year, the sheriff, by virtue of said *fi. fa.*, levied upon the personal property of Thompson, to the amount of five thousand dollars, and sufficient to satisfy said judgment, &c.

To this plea the plaintiffs demurred, and the defendant joined in the demurrer.

*S. T. Douglass*, in support of the demurrer. The plea demurred to is clearly bad, unless, as it assumes, the *levy* upon personal property, of the execution against Thompson and Brown, the makers of the note on which the defendant is now sued as endorser, satisfied the debt; or was, at least, *prima facie*, a satisfaction of it.

1. *Now the mere levy upon personal property is never a satisfaction of a debt.*

It does not divest the property of the debtor in the goods levied upon. They are in the custody of the law. The sheriff holds them, as bailee, *virtute officii*. The plaintiff has not, properly speaking, even a lien upon them. Per *Story* J. in *ex parte Foster*, 6 Law Reporter, 65, '6, '7; *Giles* v. *Grover*, 6 Bligh's R. 279; S. C. 23, Eng. C. L. R. 277; *Cooper* v. *Chitty*, 1 Burr. R. 20; *Rex* v. *Wells*, 16 East. 279; *Samuel* v. *Duke*, 3 Mees. & Welsb. 622; *Churchill* v. *Warner*, 2 N. Namp. R. 298; *Browning* v. *Hanford*, 5 Hills R. 58. It is not essential to constitute a levy that the debtor should even be deprived of the possession of the goods. *Green* v. *Burke*, 23 Wend. 492, '3, '4 and 5, and cases there cited; *Bullett* v. *Winstons*, 1 Mumf. 260.

An act of this nature ought not to work a *satisfaction* of the debt. It would be unjust and unreasonable, that the official act of the mere instrument of the law, over whom the judgment creditor has no control, except by application to the court to compel a return of the writ ; which does not in *fact* satisfy the creditor's demand; which vests neither in him, nor any one else for his benefit, (for the sheriff is not even a trustee for his benefit, Per *Story* J. in 5 Law Reporter 57) any property, or lien, or security upon, or interest in property ; from which *alone* he derives no benefit, and may, without fault of his own, never derive any ; which does not deprive the debtor of any property he before had in the goods, and does not, *necessarily*, deprive him of even the temporary possession and enjoyment of them, should operate to discharge the debtor, and deprive the creditor of all remedy against him.

The rule that a levy satisfies a debt cannot be applied in many cases without manifest injustice.   Thus it has been held that a levy, valid in its inception, may be defeated by a subsequent *extent* on behalf of the crown, *Rex* v. *Wells*, *Giles* v. *Grover*, and *ex parte Foster*, supra ; Wat. Shff. 7 Law Lib. 181; or by bankruptcy of the defendant, *Cooper* v. *Chitty*, and *ex parte Foster*, supra; or the loss of the property by inevitable accident, while in in the hands of the sheriff, *Browning* v. *Hanford*, supra ; or by the debtors eloigning the property, in which case it has been held a second levy could be made, *Wood* v. *Torrey*, 6 Wend. 526 ; or by the levy becoming dormant as to junior executions.   The plaintiff may release the property out of humanity to the debtor, *Churchill* v. *Warner*, supra ; or abandon it on account of adverse claims which he does not choose to litigate ; or the levy may be lost by the mere neglect of the officer, without the debtor being damnified or deprived of his property, as in *Caldwell* v. *Eaton*, 5 Mass R. 399.   Now in none of these instances

where the levy is lost, defeated, or abandoned, could it be held that the levy satisfied the debt.

The reasons which have always been assigned for the rule contended for, wherever it has been asserted, are insufficient to support it. In *Clerk* v. *Withers,* 1 Salk. 322; 2 Ld. Raym. 1072; *Ladd* v. *Blunt,* 4 Mass. R 402, and *Shepherd* v. *Rowe,* 14 Wend. 260, the leading cases in support of the rule, a reason assigned is that " by the levy, the debtor loses his property in the goods." We have already shown that this is not the effect of a levy. In *Clerk* v. *Withers* it is assigned, as a further reason, that the plaintff has a remedy against the sheriff. Several instances are referred to above, where the plaintiff has no such remedy. And, even if he had, this would be no reason for depriving him of his remedy against the defendant. Courts have refused to deprive a party of his remedy for similar reason, in analagous cases. 3 Com. Dig. 538, Escape E ; *Jackson* v. *Bartlett,* 8 John. R. 281. We know of no other instance where a party has been deprived of one remedy, *merely* because he had acquired another.

The doctrine that a mere levy upon goods satisfies the debt has never been established by any direct adjudication ; it has rested upon *dicta* from the begining of its existence. *Clerk* v. *Withers,* *Ladd* v. *Blunt,* and *Shepherd* v. *Rowe,* contain *dicta* only on this subject. The two latter cases decide merely, that a levy upon *land* will not satisfy the debt ; and if, as we have attempted to show, there is really no essential difference between levies upon real, and personal property, these very cases are authorities in our favor.

But whatever *dicta* may be found in the earlier cases, and in elementary works, the current of modern dicisions is clearly in favor of the doctrine, that, even as *between the plaintiff and the defendant* in the execution, a mere levy does *not* satisfy the debt. *Peploe* v. *Galliers,* 16 E.

C. L. R. 371; *Green* v. *Burke*, 23 Wend. 490, approved in 5 Hill 592; *Taylor* v. *Ranney*, 4 Hill 619, 621; *Duncan* v. *Harris*, 17 Serg. and Rawle, 436.

2. Admit, however, that, as between the parties to the judgment, the levy upon sufficient personal property of the defendant is a satisfaction; it is not so as to *third persons*, who, like the defendant in this case, are collaterally liable for the same debt, and never has been so held in any of the cases, but the contrary. *Whitacres* v. *Hamkisson*, 3 Cro. Ch. 75; *Dyke* v. *Mercer*, 2 Show. 394; 2 Saund R. 47, n. *(a)*; *Rutland Bank* v. *Thrall*, 6, Vt. R. 237, cited 4 Ph. Ev. by Cow. and H. 985; *Churchill* v. *Warner*, 2 N. Hamp. R. 298, *Poole* v. *Ford*, 18 Eng. C. L. R. 273; *Ontario Bank* v. *Hallett*, 8 Cow. 194; *Dalton* v. *Woodburn*, 24 Pick. R. 259; *Walker* v. *Bradley*, 2 Pike. 578.

It may be said that the principle of *Dyke* v. *Mercer* will not apply where the defence is set up by a *surety* : but, in some of the cases last cited, the defendant was a surety; and I am utterly unable to preceive how there can be "*satisfaction,*" which would discharge a person standing in the relation of surety, and yet would not have equally discharged him, had he been a mere co-obligor, or joint debtor.

3. It may be contended that the pleas show at least a *prima facie* defence; that, *prima faeie*, the debt was satisfied by the levy; and that the plaintiffs were bound to reply, showing that, for some good cause, the debt was not *in fact* satisfied.   But this ground cannot be sustained. 2 Ev. Pothier 144; 3 Cow. & Hill's Ph. Ev. 477, 289; 1 Chitt. Pl. 427; Story Pl. 336; 6 Com. Dig. 398; and *Peploe* v. *Galliers*, *Taylor* v. *Ranney*, and *Shepherd* v. *Rowe*, before cited.

To conclude : It appears to me that the effect of a *mere* levy is simply this : that while it actually subsists, and the property is in legal custody, and the execution re-

mains unexecuted, the other remedies of the creditor *upon the judgment* are suspended: not because the judgment is *satisfied*, *per se*, or *prima facie*, as has been often asserted, but for obvious reasons of public policy; and that until *actual satisfaction*, by sale or otherwise, the creditor is at liberty to pursue his remedies against any other party collaterally liable with the defendant in the execution, for the same debt.

*James Kingsley*, in person, and *H. T. Bakus* contra.

*Kingsley* contended: 1. That a levy upon sufficient personal property to satisfy a *fi. fa.*, is an extinguishment of the judgment on which it issued. *Mountney* v. *Andrews*, 4 Leonard 150, S. C. Cro. Eliz. 237 ; Wat. Sheriff, 7 Law Lib. 191, and cases cited in note *n* ; *Slie* v. *Finch*, 2 Roll. R. 57, S. C. Cro. Jac. 514 ; *Clerk* v. *Withers*, 6 Mod. R. 292, '9, S. C. 2 Ld. Raym. 1072 ; 2 Saund. R. 46c, 47, *n* 1 ; *Ladd* v. *Blunt*, 4 Mass. R. 403; *Bayley* v. *French*, 2 Pick. 588 ; *Reed* v. *Pruyn*, 7 John. R. 428 ; *Hoyt* v. *Hudson*, 12 Id. 208; *Denton* v. *Livingston*, 9 Id. 98 ; *Sherman* v. *Boyce*, 15, Id. 443 ; *ex parte Lawrence*, 4 Cow. 417 ; *Cutler* v. *Colver*, 3 Id. 30 ; *Jackson* v. *Bowen*, 7 Id. 13, 21 ; *Cornell* v. *Cook*, 7 Id. 313 ; *Ontario Bank* v. *Hallett*, 8 Id. 194, '5 ; *Wood* v. *Torrey*, 6 Id. 563 ; *Shephrrd* v. *Rowe*, 14 Id. 262 ; *Wood* v. *Van Ansdale*, 3, Rawle, 401 ; *Webb* v. *Bumpass*, 9 Porter's (Alab.) R. 201 ; 2 Bac. Abr. 719, 720 ; 1 Cow. 47, note ; Roll's. Abr. 902 ; *Troup* v. *Wood*, 4 John. Ch. R. 255; 2 Cow. Treat. 1073, (Ed. 1841 ;) Edw. Treat. 133; 6 Am. Com. Law. 256.

This is the general rule. There may be exceptions to it, but the exceptions tend to establish the existence of the rule. *Prima facie* then the debt was satisfied as to Thomson and Brown by the levy upon their property.

2. The defendant was an endorser for their accommodation. His contract, as such, is that of a surety. Theob.

Pr. & Sur. 1, 2; Chitt. on Bills, 448. And the obligation of a surety being accessory to that of the principal, becomes extinct by the extinction of the latter. The surety may avail himself of any defence which would be avail-. able for the principal. Theob. Pr. & Sur. 2, 115, 125, 127, 74 note *s*; *Jones* v. *Lewis*, 4 B. & C. 506; 3 Ph. Ev. by Cow. & H. 985. And Thompson and Brown, the principals, being discharged by the levy, the defendant is discharged also.

3. But even if the judgment was not *satisfied* by the levy, the defendant is discharged. The claim against a surety is *strictissimi juris.* And it is well settled that if the creditor does any act prejudicial to the surety, without his consent, the surety is discharged. Thus it has been held that the surety is discharged if the creditor takes out execution against the principal, and waives it. *Mayhew* v. *Cricket*, 2 Swanst. 185; Theob. Pr. & Sur. 143; *Lathrop* v. *Briggs*, 8 Cow. 171; see also, *Bullett's Exrs.* v. *Winstons*, 1 Mumf. R. 269. Again, where the creditor has the means of satisfaction in his hands, and does not choose to retain it, the surety is discharged. *Commonwealth* v. *Vaderslie*, 8 Serg. & Rawle. 425; *Same* v. *Miller's Ex'rs.* Id. 450; *Finny* v. *Commonwealth*, 1 Penn. R. 240; *Letchenthaler* v. *Thompson*, 13 Serg. & Rawle 157; Theob. Pr. & Sur. 143; *Collum* v. *Hinkley*, 9 Vt. R. 143. Further, a surety, on paying, has a right to be subrogated to all the rights, actions, and hypothecations of the creditor, against the principal debtor. *Craythorne* v. *Swinburne*, 14 Ves. 162; Theob. Pr. & Sur. 252, ch. 10. And any neglect of the creditor, occasioning loss of securities, to the benefit of which the surety is entitled, will discharge the surety. Id. 146; Pothier on Ob. 245. Now by the levy upon the property of the principal debtors, the plaintiff has had the means of satisfaction in his hands. The legal presumption is that the debt is thereby satisfied. Suppose the defendant in this

case now pays the debt: where would be his remedy? He would have paid a debt already satisfied. He could not look to the principal.

It is said that the debt is not, or may not be, *in fact*, satisfied. But we have seen that the facts alledged in the plea show, that *prima facie*, at least, if not *per se*, it is satisfied. Now a defendant in pleading is only bound to make out a *prima facie* defence. 1 Ch. Pl. 222, 224. If from any good cause the debt is not in fact satisfied, the plaintiff should have shown it by replication.

It is admitted that the plaintiff cannot now bring debt or *scire facie* on the judgment against Thompson and Brown. Can this action then be maintained against the defendant for the same debt? But it is said that, at all events, the doctrine that a levy is a satisfaction, does not apply in favour of a person collaterally liable for the same debt. This cannot be law, and is not established by the cases cited. We have seen before that whatever discharges the principal, discharges the surety; and that whatever defence can be made by the former, may be made by the latter also.

Ransom, C. J., delivered the opinion of the Court.

The first question presented by the demurrer is, whether a levy of an execution upon personal property of the debtor, sufficient to satisfy the judgment, shall be deemed so far an extinguishment of the debt, as to constitute a good plea in bar, to an action brought for the recovery of such debt. Were to we consider this question and decide it upon general principles, irrespective of judicial precedent, we should look, of course, to the rules of pleading and evidence, for light to guide us to its proper resolution.

In setting out a cause of action or defence, two things are especially requisite: 1. That *the facts alleged,* on which the pleading is predicated, be sufficient in law to

constitute a good cause of action or defence; and 2. That those facts be set forth according to the forms of law.   Gould's Pl. 48.   In the present case, we have only to enquire whether the facts averred in the defendant's plea, furnish a defence to the plaintiffs' declaration.

It is a fundamental rule of pleading, "that it is not necessary to state matter which would come more properly from the other side.   It is sufficient that each pleading should, in itself, contain a good *prima facie* case, without reference to possible objections not yet urged."   Steph. Pl. 394.   As Chitty expresses it : "It is enough, for each party to make out his own case in defence."   1 Chit. Pl. 222.   The party sufficiently substantiates the charge or answer, for the purposes of pleading, if his pleading establish a *prima facie* charge or answer.   He is not bound to anticipate, and, therefore, is not compelled to notice and remove, in his declaration or plea, every possible *exception*, answer, or objection, which may exist, and with which the adversary may intend to oppose him. Nor is it necessary to allege implications of fact, or presumptions of law.   Steph. Pl. 397.*

Applying these rules to the pleas under consideration, are they to be adjudged a sufficient answer to the plaintiffs' declaration ?  In other words, should a jury, with evidence before them, of the levy of an execution upon sufficient personal effects of the debtor to satisfy the judgment, *presume* that the judgment had been satisfied ?  Such evidence is to be weighed, of course, under the application of the rules of law, which define the rights and liabilities of parties, after levy made, and prescribe the duties of the sheriff, in the disposal of property levied upon.

The creditor has an absolute right to have the property

* See *Attorney General* v. *Michigan State Bank,* ante, 360

sold, converted into money, and applied to the payment of his judgment; and the debtor is liable to the sheriff in trespass, if he interfere with his possession of it. The law declares it the imperative duty of the sheriff, having seized the goods of a debtor in execution, to proceed, within the time prescribed, to sell them, and produce the money for the satisfaction of the debt, unless he be excused therefrom by the consent or acts of the parties, or by inevitable accident.

What, then, should be presumed from the averment in question?

A levy being shown to have been made upon the debtor's goods, sufficient in value to satisfy the debt, should it be presumed, in the absence of any other or further proof, that the sheriff had performed the duty ˉenjoined upon him by law, and followed his levy, by a sale of the goods, and a satisfaction of the judgment; or, should the fact of a levy *only*, be the ground of *no* presumption whatever? Or, should it be presumed from the allegation of a levy *merely*, without an averment of sale and satisfaction, that no sale and satisfaction had been made; that the property was returned to the defendant by consent of all parties; was eloigned by him; belonged to some third person; was destroyed by the elements; or was in some other way disposed of, so as to relieve the creditor and sheriff from liability, and still leave the execution unsatisfied?

The answer to these enquiries, it seems to me, perfectly settles this case, so far as the rules of pleading are to govern its decision. Because, if, from proof of a levy *alone*, a presumption of sale and satisfaction *should* arise, that is enough for the defendant; he is bound to allege nothing further. He thus makes a good answer to the plaintiffs' cause of action, *prima facie;* and he may well leave it for the plaintiff himself to bring upon the record,

by replication, any fact which would rebut such presumption.

And now let us examine the adjudged cases, and learn, if we can, from them, the proper resolution of the question. And, in doing so, it seems best, to comport with order and convenience, to consider, first, the authorities relied upon, in support of the rule for which the counsel for the defendant contends, as theirs is the affirmative side of the question.

The earliest decision to which our attention has been called, is that of *Mountney* v. *Andrews*, Cro. Eliz. 237; 4 Leon. 150, decided in 1591, during the reign of Queen Elizabeth; and it is thus: "In *sci. fa.* upon a judgment in debt, the defendant pleaded, that heretofore, a *fi. fa.* at the suit of the now plaintiff, issued, directed to the sheriff of Leicester, by force of which the said sheriff took divers sheep of the defendant, and still doth detain them. It was holden by the court a good plea, although he doth not say that the writ was returned; for the execution is lawful, notwithstanding that, and the plaintiff hath remedy against the sheriff." This case establishes the rule that a second execution cannot properly issue, while a former one is outstanding, with a levy unaccounted for.

The leading English case, however, is *Clerk* v. *Withers*, 2 Ld. Raym. 1072; S. C. 1 Salk. 323; 6 Mod. R. 270; Holt's R. 303, decided in 1704. The facts as reported were, that one Dives, as administrator of another, had recovered judgment against Clerk, the plaintiff, and sued out a *fi. fa.* and placed it in the hands of the defendant, Withers, sheriff of Middlesex. The Sheriff returned that he had seized the goods to the value of the debt, and that they remained in his hands for the want of buyers. Afterwards, and before sale of the goods, Dives, the plaintiff, died. Clerk then brought *sci. fa.* against the sheriff, to show cause why the goods should not be restored to

him, as there was nobody, (the plaintiff being dead,) to re-
ceive the fruits of the execution.   On demurrer to the
writ, in the common pleas, the defendant had judgment,
and the cause was removed to the King's bench by writ
of error.   There the cause was twice fully argued by
counsel on both sides, and Lord *Raymond,* in his report of
the case, says it was argued *seriatim* by all the judges.
Three points were made upon the argument, and the first
was, that the *property,* notwithstanding the levy, remain-
ed in Clerk, the execution debtor.   The counsel for Clerk
insisted in argument, that the property in the goods was
not altered by the service, and that if, after the service,
the debtor had paid the money, he might have taken his
goods again ; and that trover would lie against the sheriff
for the goods, if he detained them.   The *special* property,
he said, might be in the sheriff.   Again : it was urged
that the party was not discharged by the sheriff's return
that he had seized the goods to the value, &c.

*Raymond,* contra, contended that the defendant was dis-
charged by this service, and therefore there was no rea-
son that he should have his goods again.   If the sheriff
seize to the value of the debt, the defendant is discharged,
though the sheriff do not satisfy the plaintiff; and the
plaintiff cannot sue out a new execution ; for the sheriff, by
the seizure, becomes liable to him.

I have quoted from the arguments of counsel, to show
that the precise question now before this court, was pre-
sented, argued, and decided, in the case under review.

Each of the judges delivered an opinion.

*Gould,* Justice, said he was of opinion that judgment
ought to be affirmed, for these reasons : 1. Because Clerk,
by the seizing of his goods in execution, was not discharg-
ed of the judgment ; and, therefore, when upon a *fi. fa.*
the defendant paid the debt to the sheriff, this was held
to be a good plea to an action of debt upon the judgment,

So in *sci. fa.* upon a judgment the same plea was held well. As soon as the sheriff seizes the goods by virtue of the writ of *fi. fa.* he gains a *special property* in them, and may maintain *trespass* against the defendant, if he take them away. So he may maintain *trover* against a stranger that takes them away.

Chief Justice *Holt*, was also of opinion that the judgment of the common pleas should be affirmed; 1. Because, after seizure of the goods by the sheriff, he had nothing to do but to bring the money into court. 2. Though the sheriff is out of office, yet he is bound to sell the goods ; and, 3. The plaintiff has no further remedy against the defendant, against whom he recovered his judgment, but must go on against the sheriff. For, the defendant having lost his goods, may plead, *levied by fi. fa.* in bar to an action of debt, or *sci. fa.* upon the judgment; citing *Atkinson* v. *Atkinson*, 3 Cro. 390, where, in a *sci. fa.* on a judgment in *detinue*, the defendant pleaded that, upon a *distringas* upon that judgment to the sheriff, he delivered the goods to the sheriff; and the seizing the goods upon the *distringas* is the same thing in that action, as levying the money upon a *fi. fa.*, in other cases; and, as my brothers say, it has been held to be a good plea, that the defendants goods were seized upon a *fi. fa.*"

The same doctrine is held in 2 Bac. Abr. 335, where it is said, " If the sheriff take goods in execution, by virtue of a *fi. fa.*, whether he sells them or not, yet, being taken from the party against whom the execution was sued, he may *plead* that taking, in discharge of himself, and shall not be liable to a second execution, though the sheriff hath not returned the writ."

The first case we find in which this question was agitated in this country, is *Ladd* v. *Blunt*, 4 Mass. 402, decided in 1808. There the doctrine of *Clerk* v. *Withers*, that a levy of sufficient *personal* property is a good plea,

in debt on judgment is directly recognized, although it was held otherwise as to an *extent* upon land. One of the pleas was the same as the defendants' plea in this case. Chief justice *Parsons* announced the opinion of the court.

The ruling in *Ladd* v. *Blunt,* was reaffirmed by chief justice *Parker* in *Bayley* v. *French,* 2 Pick. 590, so late as 1824.

This subject seems to have first come up for consideration in the state of New York, in *Denton* v. *Livingston,* 9 John. R. 98, decided in 1812, in which case *Kent,* then chief justice, fully recognised the rule in *Clerk* v. *Withers,* to be sound law. So again, three years later, in *Hoyt* v. *Hudson,* 12 John. 207, he says "where an officer, under an execution, has once levied upon the property of the defendant sufficient to satisfy the execution, he cannot make a second levy."

Again, in *Troup* v. *Wood,* 4 John. Ch. R. 418, when chancellor, the same learned jurist, reaffirming the rule laid down in the previous cases, said : " This is the just principle of law."

*Ex parte Lawrence,* 4 Cowen. 417, re-asserts the doctrine of all the former decisions, citing them with approbation. *Jackson* v. *Bowen,* 7 Id. 13, 21, and *Cornell* v. *Cook,* Ibid. 312, and *Wood* v. *Torrey,* 6 Wend 562, are to the same effect.

In *Shepherd* v. *Rowe,* 14 Wend. 262, decided as late as 1835, the defendant plead a levy upon *real estate,* and his plea was for that reason adjudged bad ; but the court said expressly that it would have been otherwise had the levy been upon *personal* property.

In Ohio, also, this question has been adjudicated. *Cass* v. *Adams,* 3 Ham. R. 223, was debt upon an appeal bond : Plea, levy upon goods *to a large amount*: On demurrer and joinder the plea was sustained. The court say, "the

levy of an execution upon goods or land, whilst the levy is in force and *undisposed of*, is a satisfaction."

In *Webb* v. *Bumpass*, 9 Port. (Alab.) R. 201, decided in 1839, the doctrine was fully discussed, and the rule of *Clerk* v. *Withers*, and the subsequent cases, was expressly affirmed by the supreme court of Alabama.

The elementary treatises all declare and approve the principle of these decisions. In *Watson's Sheriff*, 138, it is said that "the defendant is discharged from the judgment, and all further execution, if the sheriff has taken goods to the amount of the debt, although he does not satisfy the plaintiff; or if the sheriff has levied goods to the amount of *part* of the debt, no further execution can issue until the writ is returned." Edw. Tr. 133, and 2 Cow. Tr. 1073, (Ed. 1841,) are to the same effect.

In most of the cases cited above, the point we are now considering, was brought directly before the court, as in this case, by the defendant's plea; and in all of them, the rule contended for by the defendant here, is recognised as settled law. And, it may be added, that they were tried and decided, at various times, in a period of more than two and a half centuries, during which, the best and ablest jurists that have ever lived, presided in the tribunals where those trials were had and decisions made, including a *Holt*, a *Buller*, a *Kenyon*, and a *Mansfield*, in England, and a *Parsons*, a *Kent*, and a *Spencer*, in our own country.

Great as is the weight of these authorities, however, it is encountered by the plaintiffs' counsel, and sought to be overbalanced, by what he declares to be the preponderating weight of the later cases.

And he first refers us to the case of *Peploe* v. *Galleirs*, 16 Eng. C. L. R. 371. That was a *sci. fa.*, on a judgment in replevin. The declaration averred that a *fi. fa.*, had been duly issued and returned *nulla bona* by the sheriff, and an *al. fi. fa.*, with a like return. The judgment was

for £274, 13s. 4d.   The defendant plead that a *fi. fa.* had been issued to the sheriff of Hereford, and that he had seized and taken divers goods and chattles of the defendant, of the value of £37, 13s. as by the writ of *fi. fa.* in the court remaining, &c.   To this plea there was a special demurrer, and the grounds were, 1. That the plea began and concluded as an answer to, and *professed* to answer the whole declaration, and to bar the plaintiff from having execution of all or any part of his damages, whereas, in truth, it answered only as to the £37, 13s.—2. That it was not set forth in the plea, that execution of the residue of the damages did not remain to be made to the plaintiff; and also that the taking *part* of the damages in execution was no bar to an execution for the residue.

The opinion is *per curiam*, and I give it entire:   "The defendant has merely stated in his plea, that the sheriff seized his goods, and took them in execution, and has not proceeeed to state that he had returned the writ.   The goods might have been restored to the defendant, and on this ground the plaintiff is entited to judgment."

Now it will be seen that the court decided neither of the points made in the case; but did decide, that the plea was insufficient, because it did not state a *return* of the *fi. fa.*, and that the goods had not been restored to the defendant.

The doctrine of *Clerk* v. *Withers* was not in terms, questioned; nor was it even alluded to by court or counsel. The counsel for Peploe, relied upon *Weeks* v. *Peach*, 1 Salk. 179, which merely decided, that, if a plea to the whole declaration answers but part, it is demurrable. *The King* v. *Wells* & *Allnutt*, 16 East. 282, was also refered to in support of the demurrer, which decides this point, and no other, that goods taken in execution under a *fi. fa.*, at the suit of a subject, are, before sale, liable to be seized by virtue of the King's *extent*, although

the  latter be *tested*,  *after* the delivery of the *fi. fa.* to the sheriff.

The first of these cases fully sustains  the first ground of demurrer taken by Peploe's counsel, but neither, has any tendency to support the opinion of the court.

*Peploe* v. *Galliers* was decided in 1820, and can the dignity be claimed for it, of having overruled the venerable case of *Clerk* v. *Withers,* which had stood unquestioned, for more than a century,—a century, too, which had poured a continual flood of light and learning upon legal science and civil jurisprudence? It aspires to no such consequence itself.   No English case was referred to, nor have we found any, which, in terms, nor as I think, by implication, overturns the doctrine of that case.

*Giles* v. *Grover,* 23 Eng. C. L. R. 277, was also cited. Only the head note of the case, is found in the condensed report, referred to, and that is thus : " Goods of the debtor already seized under a *fi. fa.,* but not sold, may be taken under an *extent,* in chief, or in aid."   Simply reaffirming the principles laid down in *Rex* v. W*ells & Allnutt.*

The late American cases, cited by the plaintiffs' counsel, present an aspect of this question, seeming to differ from the earlier decisions ; and of this class *Green* v. *Burke,* 23 Wend. 490, is the leading case.   The facts were, that the plaintiff and another took out an execution against the defendant, and placed it in the hands of one Stevenson, a constable ; he went to the residence of the defendant, who told him to levy on three colts, which he did, and made an endorsement thereof on the execution, but left the property in the possession of the defendant.   In a few days after, he returned the execution to the justice, and informed the defendant of his having done so, saying that he was under 21 years of age, and had abandoned the levy.   A new execution was then issued and levied

upon a quantity of growing wheat of the defendant, which was sold to the plaintiff. The defendant subsequently undertook to harvest the wheat, and tne plaintiff took it by a writ of replevin.

The defendant insisted, that the judgment was satisfied by the first levy on the colts, and that the second execution and levy, were, consequently void.

The plaintiff contended that the acts of Stevenson, under the first execution, did not constitute a levy.

The court held that the plaintiff acquired no right under the first levy, and that though Stevenson made himself a trespasser, by his assumed levy, yet he had a right to abandon it. " The result is plain," said Justice *Cowen*, in pronouncing the opinion of the court. " Stevenson was a trespasser, and after the plaintiffs in the execution had been informed that he was an infant, they, by urging him on, would have brought themselves to participate in his peril." " The upshot is, that this young man prudently chose to do before hand, what the law would have forced him to do, in another form; and however stringent the rule of satisfaction by levy, this case made a plain exception." The opinion of the learned judge contains a long and sifting criticism upon *Mountney* v. *Andrews*, and *Clerk* v. *Withers*, and the later cases, which had been supposed to establish the rule, " that a judgment was *unqualifiedly* satisfied by a levy, merely." He strenuously contended, that " *satisfaction*," in all those cases, is spoken of under many qualifications and exceptions; and, alluding to Stevenson's levy upon the colts of the defendant, he remarked : " *Prima facie*, then, the debt was, or might have been, according to the event, satisfied by the levy." "Admitting that the constable had the power to levy, then, so long as he kept the act good, and followed it up, something near the consequence contended for, undoubtedly followed ; but he withdrew, without the consent or knowl-

edge of the plaintiffs, and I am not prepared to admit that, in such a case, the creditor is bound to look to the officer alone for his remedy." He concludes his review of this branch of the case thus : " What, then, after all, does the rule amount to ? Merely this : that the levy is a satisfaction, *sub modo.* It may operate as a satisfaction, and must be fairly tried; but if it fail, in whole or in part, without any fault of the plaintiff, he may go to his farther execution. He must fairly exhaust the first, and while that is going on, he can neither sue on the judgment, nor have another *fi. fa.*, nor a *ca. sa.*"

Now, can it be insisted, that this case overturns the doctrine of *Clerk* v. *Withers*, and establishes a new rule ? I think not, clearly. It conflicts with that case, and those which have followed and been based upon it, so far only as they are supposed to uphold the proposition that a naked levy is, of itself, an absolute and unqualified satisfaction of a judgment. The object of Justice *Cowen* seemed to be to show that such a rule was not of universal application ; that there were many exceptions to it ; and that the case he was discussing, fell within them. This is apparent from the whole course of his reasoning.

*Taylor* v. *Ranney*, 4 Hill's R. 620, is also referred to. That was *sci. fa.* to revive a judgment. The second plea of the defendants was, that a *fi. fa.* had been issued, by virtue of which the damages, costs and charges, were levied on the goods, *lands and tenements* of the defendants. The plaintiffs replied, and the defendants demurred to the replication. Justice *Bronson* delivered the opinion of the court in these words : " The second plea does not show a satisfaction of the judgment. The allegation is, that by virtue of the *fi. fa.*, the damages were levied *on* the goods and chattels, *lands* and tenements, of the judgment debtor. It should have been, that the damages were levied *of* the goods, &c. A mere levy upon *lands, never* amounts to

satisfaction; nor does a levy upon goods, even where they are of sufficient value to pay the debt, *necessarily* amount to satisfaction. Here the levy was upon lands, as well as goods, and there is no averment that *either*, or *both* of them were of sufficient value to pay the debt, or that any sale or satisfaction has followed. The plea is clearly bad." No cases were referred to in support of this decision, except *Shepherd* v. *Rowe*, to show that a levy upon *lands* was not a satisfaction of a judgment, and *Green* v. *Burke*, to. show that a levy of sufficient *personal* property, was not *always* a satisfaction. It will be observed here; that there was no averment that the property levied upon was sufficient in amount to pay the debt.

*Browning* v. *Hanford*, 5 Hill's R. 588, was an action by the creditor, against the sheriff, for not collecting an execution. The execution had been levied upon sufficient goods to pay the debt, but they had been consumed by fire, without fault of the sheriff. It was held that he was not responsible for their value.

*Duncan* v. *Harris*, 17 Serg. & Rawle, 436, was a writ of error to reverse a *testatum fi. fa.* issued from the common pleas. A former *fi. fa.*, issued upon the same judgment, had been levied upon two hundred hogs, the property of the defendants, and the levy released by the plaintiff's attorney. The plaintiff in error, the debtor in execution, prayed that the execution might be reversed and set aside, on the ground that the judgment was satisfied by the first levy. The court refused to set aside the execution, but affirmed it, saying : " The hogs were levied on by the sheriff, and were released, for what cause does not appear, nor is it necessary to appear, by the plaintiff's attorney, with directions that the writ should not be executed. The property never went to the use of the plaintiff, but was *returned to the defendants*. It would be a strange perversion of a principle to convert such a

transaction into the satisfaction of a debt." This case, it will be observed, differs essentially from the one at bar. The levy was released with the consent of the debtor, obviously, as it is said the property was returned to him.

*Whiteacres* v. *Hamkinson*, Cro. Chas. 75, was next referred to, and is to the effect that, if one joint obligor be taken in execution, and the sheriff suffer him to escape, the plaintiff may sue the other obligor, and is not confined to his remedy against the sheriff. Unquestionably, a party may pursue each and every *joint* obligor, till he obtains *actual* satisfaction. Every presumption of payment in that case, was positively excluded, by the escape of the debtor.

*Dyke* v. *Mercer*, 2 Show. 394, was, like the last case, debt on a joint and several bond. The defendant pleaded that his co-obligor was sued to judgment, and thereupon a *fi.fa.;* and that the money was levied by the sheriff. The plaintiff demurred, and had judgment ; and, says the report, "a difference was taken between this case and where a *sci.fa.*, or debt is brought on the judgment, against the party himself, for *there* such a plea may be good, for he shall not pay twice, but a co-obligor can plead nothing but satisfaction actually made of the debt." A case clearly distinguishable from the one before us, as will hereafter be shown.

*Rutland Bank* v. *Thrall*, 6 Verm. R. 237, cited also by the plaintiffs, was where the joint maker of a promissory note was sued. Although he was a joint maker, yet he, *in fact*, signed as surety for another. Thrall, being an attorney, sued the principal debtor, Holmes, in the name of the bank, and collected a large part of the money, but refused to apply it to the payment of the note. The court say : "Thrall became the principal debtor, having the funds in his hands for the payment of the debt." "Had not the plaintiffs their election to proceed against him,

either as maker of the note, or for money had and received?"

Several other cases were cited, which I deem it unnecessary to comment upon; they do not vary the aspect of the question from that exhibited by those already referred to.

And what do these authorities prove? Do they not show, very clearly, that the ruling in *Mountney* v. *Andrews*, and *Clerk* v. *Withers*, has been regarded as settled law, from the times those cases were severally decided, until the present day?

The doubts which seem to have arisen in the minds of some judges of later times, evidently have proceeded from the language used by the courts in announcing their decisions. Although, as we have seen, the question before the court, was not, in a single case cited by the counsel of either party, whether a levy *merely*, upon personal property sufficient, &c. absolutely, and *per se*, satisfied a judgment, yet the courts have very frequently asserted that broad proposition without qualification. Such proposition it is, that judges have so often and so strenuously combatted. The defendant does not seek here to maintain that proposition, nor is it at all necessary that he should do so, to sustain his plea.

The question really presented by every case to which reference has been made, has been, whether a levy upon personal property, sufficient in value to pay the debt, was good ground for opposing a motion for further execution, or a good plea to a *sci. fa.*, or action of debt upon judgment;—whether, from the allegation of such levy, with nothing further, a satisfaction should be presumed, and thus the allegation should constitute a *prima facie* defence. That is the only question here. Under the rules of pleading before alluded to, can any other than an affirmative answer to the question be extracted from the numerous

cases which have passed under review? I think not. To that effect, substantially, is *Green* v. *Burke,* the case most confidently relied upon, in support of the demurrer.

The counsel for the plaintiffs insisted, that the rule in *Clerk* v. *Withers,* could not be sustained, because the reasons upon which it was based were unsound. It will be remembered, that in many of the cases, the judges assigned as a reason for their opinions, that the defendant lost his goods by the levy, and, *therefore,* his debt should be deemed to be discharged. If, however, the rule itself be sound, it matters not what reasons were assigned for its adoption.

But, I apprehend the effect of the levy to be substantially as stated in the cases. Without stopping to define a levy more particularly, it is sufficient to say, that a *valid levy* deprives the debtor immediately of the control, and if the sheriff elect, of the possession, of his goods; and ultimately, if pursued, absolutely divests him of his property in them. Precisely as stated in *Clerk* v. *Withers,* by *Gould,* Justice, "as soon as the sheriff seizes the goods by virtue of the writ of *fi. fa.,* he gains a *special property* in them, and may maintain trespass against the defendant, if he takes them away." "So, he may maintain *trover* against a stranger that takes them away."

The plaintiffs' counsel also contended, and cited numerous authorities to show, that in many instances, the principle on which the defendants' plea rests, cannot be applied; as, if the defendant become a bankrupt after the levy; or, if the property be destroyed by inevitable casualty before sale, as by fire; or if it be restored to the defendant by his consent; or eloigned by him; or, if it belong to a third person, &c.

In none of these instances, it was argued, could the levy be a satisfaction of the judgment. The counsel was right, beyond question. But these, the defendant insists,

Farmers and Mechanics' Bank *v.* Kingsley.

are only exceptions to the rule, and tend, therefore, to establish it.   Finally, upon the most thorough investigation I have have been able to make of this question, I am brought to the conclusion, that, as between the creditor and principal debtor, the rule of law is that for which the defendant contends, viz: that a levy outstanding and unaccounted for, upon personal property sufficient in amount to pay a judgment, is *prima facie* evidence of satisfaction, and, therefore, constitutes a good plea to *sci. fa.*, or an action of debt on judgment.   That such levy is *conclusive* evidence of satisfaction, is not pretended.   A plea setting up such a levy, therefore, if false in fact, may be traversed ; or, if a levy have been made, but not followed by sale and satisfaction, for any sufficient reason, the levy may be confessed, and its legal effect repelled by an allegation of any fact, which, by law, should withdraw it from the operation of the general rule.   Thus, simple and direct issues would be formed, easy to be comprehended and tried, and the rights of both parties protected.

It now remains to enquire whether the defendant can avail himself of such a defence.

The fourth plea avers, that the defendant endorsed the note declared on, for the accommodation of the makers, and without consideration, and that the plaintiffs had notice of such facts.

Whenever a note or bill is made, drawn, accepted or endorsed, by or on account of a person who has received no consideration for the same, it is said to be drawn, accepted or endorsed for accommodation.   Bayl. on Bills, 438.   And if such note or bill be negotiated, the maker, or other party for accommodation, and the person who has received value for the note or bill, are considered as standing in the relative situation of surety and principal.   3 B. & P. 363 ; Chitt. on Bills, 443 ; Theob. Pr. & Sur. 180 ; Chitt. on Contr. 534.   The defendant, then,

stands in the relation of a surety to Thompson and Brown, the makers of the note in suit.

A surety promises to pay the debt of another person, who is in the first instance liable, in case of the failure of payment by such person. His undertaking, though it may be contemporaneous, is not joint, with that of the principal debtor, but is merely accessory and collateral to it.

Therefore, if the obligation of the principal debtor be extinct, that of the surety, or accessory, is extinguished also. Theob. Pr. & Sur. 1, 2. The surety, consequently, may avail himself of any defence which could be set up by the principal debtor, (except it be merely personal, as a discharge in bankruptcy ;) and, in this respect, there is a wide distinction between sureties and joint contractors. Each and every maker of a joint contract, promises, absolutely and unconditionally, to pay the *whole* debt; therefore, nothing short of actual payment or release, will constitute a good defence to an action against any of them. But very different, as we have shown, is the undertaking of a surety. He promises to pay, *only* upon condition that the principal does not. If, therefore, for any reason, except as just stated, a recovery cannot be had against the principal, no more can it against the surety. And a contrary doctrine would, to my mind, be equally absurd and unjust. If the original debt be *satisfied,* no action can be maintained against the surety, of course ; and, whatever, in contemplation of law, makes a satisfaction of the debt, and thereby discharges the principal, necessarily extinguishes the liability of the surety. It would be as difficult for me to conceive of a surety's liability continuing after the principal obligation was discharged, as of a shadow's remaining after the substance was removed.

Many cases were referred to by the counsel of the

plaintiff in support of his position upon this branch of the case; but none of them, in my judgment, are sufficient for his purpose.

The first to which our attention was called, was *White-acres* v. *Hamkinson*, Cr. Chas. 75, already noticed while considering the other branch of this case. That, it will be remembered, simply decides that an escape of one joint obligor, though suffered by the sheriff, is not a bar to an action against his *co-obligor*. *Dyke* v. *Mercer*, 2 Show. 393, also cited, was, like the last case, debt on a joint bond, and therefore not in point. *Rutland Bank* v. *Thrall*, 6 Vt. R. 237, was relied upon in the argument of this point also, but I cannot preceive its tendency to fortify the plaintiffs position. *Thrall*, we shall recollect, as attorney of the bank, collected the money of the principal, and judge *Phelps* held him liable on the express ground that he had thereby become himself the principal debtor; applying the familiar principle that as the surety is one who obliges or binds himself on behalf of another, his obligation as surety is destroyed by his becoming *himself* the principal debtor; for a man cannot be his own surety, say the books. Theob. Pr. & Sur. 2.

*Churchill* v. *Warner*, 2 N. Hamp. R. 298, it seems, to me aids the plaintiff, as little as the case last refered to. It was an action upon a receipt made jointly and severally by the defendant, and one Turner, for a quantity of hay taken on an attachment against Warner himself. Turner was sued upon the receipt and judgment had against him, and execution levied on his property, but it was never sold or taken from his possession. Warner, the joint receiptor, and in fact the principal debtor, was then sued, and sought to defend the action on the ground of the execution and levy against Turner. That such a defence could not avail *him*, the *principal*, as well as *joint* debtor, is most obvious, and so the court held.

In *Poole* v. *Ford*, 18 Eng. C. L. R. 273, the acceptor and drawer of a bill had *both* been sued, and judgment recovered against each; the plaintiff took out a *fi. fa.* and levied on the goods of the acceptor, which he abandoned by agreement with the acceptor, and received from him another security to pay at a future time. The drawer contended that this discharged him. The court doubted, but, "finally determined, that the withdrawing the *fi. fa.* against the acceptor did not discharge the drawer; and that the rule, that giving indulgence to an acceptor, without the consent of the drawer, discharges such drawer, does not apply after judgment. Here, it will be observed, the execution was withdrawn, with the express consent of the principal debtor, and the goods levied upon, returned to, and received by him; so that there could be no pretence of a satisfaction, either by the principal or surety.

*Ontario Bank* v. *Hallett*, 8 Cow. 194, was next cited. That was an action of debt for an escape from the defendant, who was sheriff of Herkimer county, of one Graves and another. The commitment and escape of the debtors were shown. The defendant then proved that one Sharpe had confessed judgment as collateral security, to the Bank, for the debt; and that, prior to the commitment of the principals, (Graves and the other,) an execution was taken out against Sharpe, and the under sheriff went with it to Sharpe's residence to make a levy. Sharpe said the farm and property upon it were not his. The under sheriff did not remove the property, or make an inventory even, but told Sharpe he had levied. He informed the plaintiffs agent, that he should proceed no further then, unless indemnified. Nothing further was done under the execution. The defendant insisted that here was a levy on personal property, sufficient to pay the execution; that the judgment against Sharpe was thereby satisfied; and,

consequently, the judgment on which the *ca. sa.* issued, by which Graves had been committed, was extinguished. The plaintiff had judgment against the sheriff, and on a motion for a new trial, the court say : "As to the levy, it is apparent that none was made, or intended to be made; and, if there had been, the sheriff was so well satisfied of an adverse claim, that he demanded an indemnity." "Whatever may have been the state of the title, it can never be permitted to a defendant, who denies that he is the owner of property levied on, to take the benefit of the rule, which considers the levy on sufficient property, *unquestionably* belonging to the defendant, a satisfaction of the debt." Again, in the same case, it was said : " On the collateral security, the plaintiffs might proceed at their election, but were not obliged to hazard litigation for the benefit of the original debtor.   They might cease, in their discretion, to pursue such security.   The *real* debtors have no just cause to complain, for *they* are the persons who ought to pay."

Thus I have briefly run through the cases, on the authority of which, we are called upon to determine, that the defendant cannot set up, by way of defence, an execution and levy upon the goods of the principal debtors, although it might avail in an action against them.   As I remarked, at the outset, I think they fall very far short of maintaining the position assumed in behalf of the plaintiffs.

The counsel for the defendant cited upon this point, *Jones* v. *Lewis*, 4 B. & C. 506.   That was an action against a party, who, like the present defendant, had indorsed a note for the accomodation of the maker.   The indorsee received from the maker five shillings in the pound, in full of his demand; and he was told by the maker, that the indorser would continue liable for the residue of the debt.   The court held the endorser discharged of the entire debt and

justice *Holroyd* said: "Although this be a case where the action is brought against a surety, it must be considered in the same light as if it was brought against the principal. If the original debt be satisfied and gone, no action will lie against the surety." And *so* held all the judges. What is the principle of this case? Not, that the indorser was discharged by giving time to the maker, for that was not done. Nor, that the debt was fully satisfied, for only *one fourth* part of it had been paid. No, the principal is, that the *principal debtor* having been discharged by the compromise, no action could be prosecuted against him, and *therefore* none could be maintained against the surety. The *substance* was taken away, and the *shadow* vanished at the same time.

*Mayhew* v. *Crickett*, 2 Swanston, 185, was where the creditor took out execution and levied upon the property of the principal debtor, and afterwards, without the knowledge or consent of the surety, withdrew the execution and restored the property to the debtor. Lord *Eldon*, chancellor, said, " I think it clear, that, though the creditor might have remained in possession if he chose, yet if he takes the goods of the debtor in execution, and afterwards withdraws the execution, he discharges the surety, both at law and in equity.

*Bullitt's Executors* v. *Winstons*, 1 Mumf. R. 269, arose upon a motion to set aside an execution, on the ground that a former one, for the same debt, had been regularly issued and levied upon the goods of the movers, who were only sureties for the debt, and the property then taken released and discharged, by one of the plaintiffs, under a compromise with the principal debtor; to which compromise they were not parties, or in any manner consulted with respect to the same. The court decided that the indulgence granted to Littlepage, the principal debtor, without the consent or privity of Winstons, amounted

to a release as to him; the property once taken upon the execution, being, by the act and consent of the plaintiff, put out of the custody of the law, in which it had before been.

It is laid down in 3 Ph. Ev. by C. & H., 985, citing 7 Mart. Lou. R. 193, that "there is no rule in our laws better understood, than that which allows the surety the right of availing himself of the same means of defence, (save those that are merely personal, as a discharge by the bankruptcy or insolvent laws, &c.,) which the principal debtor could resort to."

The rule to be extracted from all these cases seems to me clearly to be the one already alluded to, that whatever, in legal contemplation, extinguishes the *debt*, as against the principal debtor, is a good defence in a suit against the surety.

Having shown, conclusively, as I think, that a levy upon personal property sufficient to pay the execution, is *prima facie* evidence of satisfaction, and therefore a good plea in an action against the principal, it follows, of course, that the surety may interpose the same defence, when he is sought to be charged.

Our conclusion, then, is, that the demurrer to the defendant's plea ought to be overruled.*

GOODWIN, J. dissented.

*Ordered certified that the demurrer should be overruled.*

* The recent case of *Kershan* v. *Merchants' Bank*, 7 How. Miss. R. 386, seems to sustain the ruling of the court in the foregoing case. The abstract of it, contained in U. S. Dig. Supp. Vol. 1, p. 782, § 1112, is as follows: " The acceptor of an inland bill in Mississippi, became the surety of the payee on a forthcoming bond, which was forfeited, and an execution levied on sufficient" (personal ?) " property of the surety. The payee of the bill assigned the same, but the execution was levied before notice of the assignment. In an action by such assignee, against such acceptor, the defendant filed as a set off the amount of such levy. *Held*, that the levy was *prima facie* satisfaction of the judgment, and entitled the surety therein to his action against the principal, and rendered the amount of the judgment a good set off against the bill of exchange. *Held*, also, that if actual satisfaction was not had, owing to a legal discharge of the levy, it should have been shown in avoidance, and

Farmers and Mechanics' Bank *v.* Kingsley.

that the plea need not have averred that the property levied upon had been sold."
To the last point, see also, *Walker* v. *McDonnell*, 4 Smedes & Marsh. 118.

For other recent cases in which it has been asserted that a levy upon sufficient personal property is a *satisfaction,* see *Young* v. *Read*, 3 Yerg. 297; *Camp* v. *Laird*, 6 Id. 246; *Carroll* v. *Fields*, Id. 305. In *Ordinary* v. *Spann*, 1 Richardson's R. 259, it was said to be an *implied* satisfaction; and in *Porter* v. *Boone*, 1 Watts & Serg. 101, it was held to be a satisfaction if the levy be released and become lost to the defendant; but otherwise if the release is made at the request of the defendant. And in *Ex parte King*, 2 Dev. 341, and *Binford* v. *Alston*, 4 Id. 351, it was held that where the defendant has recovered possession of the goods, either with or without the consent of the sheriff, the seizure is no payment, and a new execution may issue.

In *The People* v. *Hopson*, 1 Denio, 577, '8, (recently decided by the supreme court of New York,) the question before the court was as to the authority of a justice of the peace to renew an execution after sufficient property to satisfy it had been levied on, and was held under the levy, and there was not time enough remaining to advertise and sell. *Bronson*, C. J., in delivering the opinion of the court, uses the following language: " It is said that the levy upon sufficient personal property to pay the debt was a satisfaction of the judgment; and consequently that the renewal was void. We have repeatedly held that such a levy does not always satisfy the judgment. *Green* v. *Burke*, 23 Wend. 490; *Ostrander* v. *Walter*, 2 Hill, 329. And if the broad ground has not yet been taken, it is time it should be asserted, that a mere levy upon sufficient personal property, without any thing more, never amounts to a satisfaction of the judgment. So long as the property remains in legal custody, the other remedies of the creditor will be suspended. He cannot have a new execution against the person or property of the debtor, nor maintain an action on the judgment, nor use it for the purpose of becoming a redeeming creditor. But without something more than a mere levy, the judgment is not extinguished. There is no foundation in reason for a different rule. The mere levy neither gives any thing to the creditor, nor takes any thing from the debtor. It does not divest a title: it only creates a lien on the property. It often happens that the levy is overreached by some other lien, is abandoned for the benefit of the debtor, or defeated by his misconduct. In such cases there is no color for saying that the judgment is gone; and yet they are included in the notion that a levy satisfies the debt. And where, as in this case, the officer omits to sell within the life of the execution, I see no reason why the debt should be deemed paid, nor why the creditor should not have a renewal of the process. The true rule I take to be this: the judgment is satisfied when the execution has been so used as to change the title, or in some other way deprive the debtor of his property. This includes the case of a levy and sale; and also the case of a loss or destruction of the goods after they have been taken out of the debtor's possession by virtue of the process. When the property is lost to the debtor, in consequence of the legal measures which the creditor has pursued, the debt is gone, although the creditor may not have been paid. He must take his remedy against the officer, if he has been in fault; and if there be no such remedy, the creditor must bear the loss. But until the debt is paid, or the debtor has lost his property in consequence of the levy, the judgment remains in force."

These views of C. J. *Bronson* are not referred to as conflicting with those expressed in the foregoing opinion, delivered by Justice *Ransom*. It is admitted in that opinion, that a levy upon goods is not, *per se*, satisfaction. The ground taken is, that it is satisfaction *prima facie* : that is, that from the mere fact that a levy has been made upon sufficient personal property, the presumption arises that such further proceedings have been had, or acts done, as have resulted in the actual satisfaction·

of the debt, or in the extinguishment of the debtor's liability. From this, the conclusion at which the court arrive seems inevitable; and it seems to me, that the court must have arrived at the same result, even if the defendant had *not* stood in the relation of *surety* to the persons whose property was levied upon, but had been a mere co-obligor or joint debtor.

It may not be improper here to suggest, whether the facts alleged in the plea in this case were properly pleadable in *bar ;* or whether they ought not rather to have been pleaded *in suspension of the action* merely? A plea in bar must be "a substantial and *conclusive* answer to the action." 1 Steph. Pl. 51. It bars the action *forever.* Now suppose that, at the time the plea was filed in this case, the levy alleged to have been made had been actually subsisting—the property remaining undisposed of. What answer could the plaintiffs have made to the plea? Certainly none. They must, therefore, have allowed judgment to go against them. But suppose afterwards, and before sale of the property, the defendants in the execution had become bankrupt, and the property had passed to their assignees, or that for any other good reason the levy had proved unavailable to the plaintiff. Would the remedy against the defendant have been gone? Would the judgment in the action have been a conclusive answer to a second action for the same cause? It seems to me not. See remarks of *Cowen,* J , in *Green* v. *Burke,* 23 Wend. 497, 500, 501. It is proper to add that this question was not raised on the argument, (all objection to the form of the plea being waived,) and was not, therefore, considered by the court.
—*Reporter.*