Cowen, J.
[ *492 ] *By the Court, Admitting there was a doubt upon the evidence whether the defendant took the wheat, and that the verdict should not be disturbed had it been found on the issue of non cepit merely, still it cannot be maintained in its present form, provided the plaintiff had title. Being general, the entry must be in favor of the defendant on both issues. In legal effect, the finding is, first, that he never took the property ; and secondly that it belonged to him when it was replevied. This entitles him not only to a judgment for his costs, but also for a return.
There is no dispute that the title to the wheat had been acquired by the plaintiff, in virtue of his purchase under the execution held by Rood, unless the previous levy on, and abandonment of the colts by Stevenson, worked a satisfaction of the judgment.' The latter held a regular execution ; and made a levy which was sufficient in point of form, on property of adequate value. It is supposed by the plaintiff’s counsel that there was no levy, because no act was done which would, but for the protection of the execution, have been such a taking of the colts as to amount to a trespass. This was spoken of as the criterion of a levy, in Beekman v. Lansing, 3 Wend. 446, 450 ; and it Avas there said the court were inclined to consider it an essential criterion. We are not disposed to deny that it is so. The court there also said that the officer must take actual possession where it is in his power; but he need not remove the goods. They may be left with the defendant ; nor did the court insist that an inventory was necessary. The case cited was well considered; and on the question of what acts of the officer alone shall constitute a levy, highly authoritative. The seizure was claimed as having been consummated at a point of time anterior to the rent of the tenant falling due to his landlords, Avho were interposing their claim by motion, to the proceeds of the goods; and as they were not present at the time of the levy, and did not know of it, nothing, as against them, could be claimed on the score of waiver. It lay Avith the plaintiff in the execution, therefore, to make out a seizure which was perfect in itself.
The acts of the sheriff Avere all summed up in his going to [ *493 ] the house of the judgment ^debtor Avith the execution in his pocket, but omitting even to apprise him that he had come to *493 make a levy. The court say that he should have done some definite act in respect to the goods; something which could be known to the debtor and communicated to his landlords. That the latter, at least, were not to be affected by a mere mental levy. Id. 451. This question is well considered by Taylor, C. J., in Doe, ex. dem. Barden, v. McKinnie, 4 Hawks, 279, 280. In short, as between the sheriff and third persons, he shall not be allowed to proceed in so secret a manner, as to cut off all probable means of their knowing how t.o deal with the debtor in respect to his goods, whether as purchasers from him, or as his landlords claiming rent, or as subsequently levying creditors. Vid. Bliss v. Ball, 9 Johns. 132. Haggerty v. Wilber, 16 id. 287. As it respects the defendant himself, too, the, proceeding should be such as to apprise him of the step; and if he be not informed of it, at least a reasonable time before the sale, yet the sheriff’s acts should be such as not to leave the inference of intentional concealment. The defendant should have a fair 'opportunity to make the proper arrangements for preventing a sacrifice of his property. The proceedings of the officer being such as are naturally calculated to avoid injurious consequences, the form in which he chooses to make the levy is totally immaterial. Holding the process, having the goods in his power, and directly declaring his intent, or doing what is equivalent, as taking an inventory, or making a memorandum of the levy, satisfy that branch of the rule which directs a change of possession. Speaking is always an important part of the res gestee which constitute such a change. In Wood v. Vanarsdale, 3 Rawle, 401, the sheriff merely entered a store of goods, and declared his intention to levy ; and although the defendant expressed his dissatisfaction, and did no act to waive formality, the seizure was held to be complete, notwithstanding the officer returned milla lona. He had put no one in possession, taken no inventory, and never, after declaring the levy, interfered with the goods in the least. The court held distinctly, citing the New York cases, that none of these acts were, necessary ; and the sheriff ^having [ *494 ] returned the execution and abandoned the levy, by consent of the plaintiff’s assignee, the judgment was declared to have been satisfied. In Trovillo v. Tilford, 6 Watts, 498, the sheriff did not see the goods at all, nor did he go near them ; but the defendant gave him a schedule, by arrangement, which he agreed should be considered a levy; and that was held sufficient, even against a third person, claiming as the defendant’s vendee. Gilkey v. Dickerson, 3 Hawks, 293, is not incompatible with Trovillo v. Tilford, nor with the common notion of what acts constitute a levy. There the coroner merely called on the defendant and asked him for a list of goods which he might sell to satisfy the execution; and the defendant gave him a list of negroes sufficient in value ; but the coroner never saw them, and the defendant afterwards took them out of the county and sold them. The coroner therefore levied again on two other negroes, which the *494 defendant afterward sold to Gilkey, who insisted on his right as vendee, because the judgment had been satisfied by what he called the first levy. Held that it had not; and Taylor, C. J. gave the reason. He said, “ Had the property been present when the list was delivered, and the coroner had signified that he held it hound to answer the execution, and there was no opposition to his possessing himself of it, had he so desired, it would have amounted to a levy.” It will be perceived that no evidence was given whether the negroes were any where within miles of the coroner; and he did nothing and said nothing indicating that he considered the list a levy. Beside, according to our cases, the eloignment and sale of the negroes by the defendant would have warranted the second levy irrespective of the question whether the first had been regular or not.
An actual taking of possession, therefore, does not necessarily imply an actual touching of the goods ; but merely such a course of action as, in effect, is calculated to reduce them to the dominion of the law. They are then considered as -in the custody of the law; and a degree of constructive “force is imputed which at once entitles the party whose goods are [ *495 ] thus seized to his action of trespass, if the officer *be destitute of authority. Whether the rule requiring that to be done which may amount to a trespass, is thus satisfied, we have examined more at large in the case of Connah v. Hale, ante, p. 462. I have said more upon the point now, because, Bailey v. Adams, 14 Wendell, 201, has been pressed upon us as implying that the property must in some way be manually interfered with. There the constable went with his execution to the man who had possession of the property, a waggon, claimed to levy on it as belonging to the defendant in the execution, making a note of the levy, and leaving the waggon, with directions that the man should take care of it. Ten or twelve days after, becoming satisfied that the execution debtor had no title, he offered to relinquish his claim to the plaintiff, who was the real owner ; but the latter refused to accept the waggon, and brought trover against the creditor who had directed the levy. The acts of the constable tvere held not to have been a conversion; the court remarking that the actual possession of the property was not changed, and the plaintiff had been put to no charge concerning it. The learned judge who delivered the opinion of the court, referred in a general way to Reynolds v. Shuler, 5 Cowen, 323, and Bristol v. Burt, 7 Johns. R. 254. The question was considered in those eases ; but, with deference, I understand them both to hold that such acts as were proved in Bailey v. Adams, would clearly amount to a conversion ; and that even an actual acceptance of the goods by the owner, much less a mere offer to deliver them, could no farther qualify the wrong, than by reducing the damages. Wintringham v. Lafoy, 7 Cowen, 735, was not cited. That case held the officer liable in trespass de bonis asportatis, though he merely claimed to have levied, taking an inventory and receipt. *495 The decision was also incompatible with the rule laid down in Allen v. Crary, 10 Wendell, 350, Fonda v. Van Horne, 15 id. 631, 633, and many-other cases. The injury being complete it is clear that a tender of the property will not affect the plaintiff’s rights. Clark v. Hallock, 16 Wendell, 607. Hanmer v. Wilsey, 17 id. 91. It is said in the latter case, and so are all the authorities, that even an acceptance by the plaintiff, “goes to the question of damages only. There is no [ *496 ] such thing as waiving a cause of action after it has once arisen. And in the case at bar, there is no question that either trespass or trover would have lain by Burke against Stevenson, the minor, notwithstanding his abandonment of the levy, unless he was protected by the process; of which, by and by. The case was much like Connah v. Hale, which I have already mentioned. The effect of possession remaining unchanged, after amere paper levy, we have also had occasion to consider incidentally, at the present term, in Bowman v. Teall. The result of the cases we find to be, that, when the levy is complete, though the tenant be never disturbed in his possession of the goods, but go on in the uninterrupted use of them, yet the landlord is liable for damages. See Bosanquet, J. in Baylis v. Usher, 4 Moore & Payne, 790; Willoughby v. Backhouse, 4 Dowl. & Ryl. 539; 2 Barn. & Cress. 821, S. C. ; Sells v. Hoare, 8 Moore, 451; 1 Bing. 401, S. C. The general rule, as considered and vindicated by these authorities, is, that no act of the plaintiff, short of a release or acceptance of some distinct thing in satisfaction, will operate to discharge a subsisting ground of action. In short, there was no such thing as Stevenson’s purging his own wrong by merely omitting to follow up the trespass he had committed. He went to the field with the defendant, for the purpose of levying on the colts; and made a note of the levy on the back of the execution. He not only had the goods in view, and the intention to levy, but the defendant, the execution debtor, had notice, and co-operated in, and submitted to the act.
Prima facie, then, the debt was, or might have been, according to the event, satisfied by the levy. And many cases are cited by the defendant’s counsel to show that, although the constable gave it up, and returned the execution to the justice, utterly refusing to proceed, yet the plaintiffs were concluded and could not sue out a new execution. The ground taken is, that the judgment was unqualifiedly satisfied by the levy. Admitting that the constable had the power to levy, then, so long as he kept the act good, and followed it up, something near the consequence “contend- [ *497 ] ed for undoubtedly followed ; but he withdrew, without the consent or knowledge of the plaintiffs, and I am not prepared to admit that, in such a case, the creditor is bound to look to the officer alone for his remedy. I know that learned judges use language in the cases cited, which is very strong. They say a levy is a satisfaction of the debt; but every book they *497 cite, and every case they decide, shew under what qualifications they speak. They all go back to Mountney v. Andrews, Cro. Eliz. 237. There the plaintiff brought a scire facias quare executionem non, and the plea was, not simply that the sheriff had levied, but that he had taken divers sheep of the defendant for the debt, and yet detaineth them. The reason given was, that “ the plaintiff has his remedy against the sheriff, and the execution is lawful which the defendant cannot resist.” The value of the sheep was not mentioned ; and surely it cannot be pretended that such a step shall be taken as a satisfaction per se. Suppose the sheep had been sold, bringing only half the judgment; was the remedy by action, scire facias, or execution gone for the residue ? I need not cite authorities to show that such a consequence would not follow. It would be absurd, and contrary to all practice. The doctrine laid down in Clerk v. Withers, 1 Salk. 322, the case commonly relied on, is, that "the defendant’s goods being taken, no farther remedy could be had against the defendant, but against the sheriff only.” The reason given is that he may be compelled to return his writ. If it be a false return, an action lies ; if he returns a seizure and sale, he has the money ; if he has seized and not sold, that does not discharge, but excuse the sheriff, and therefore, the plaintiff may have a venditioni exponas,” &c. The doctrine thus laid down was not material, at least not essential to the decision ; and on referring to the same case, 2 Ld. Raym. 1072, a cotemporary report, the whole will be found to lie in a dictum of Gould, J. founded on a curtailed statement of Mountney v. Andrews. In this he does riot present the plea there as one of detainer, but of levy only. It is impossible to say that a verdict for the 'defendant would have operated as more than a tem- [ *498 ] porary bar of execution. The *seizure works no change of interest beyond vesting a special property in the officer. The general property still remains in the debtor. Wilbraham v. Snow, 2 Keb. 588 ; 1 Sid. 438, S. C. and vid. Ayer v. Aden, Yelv. 44. The goods are but a collateral security : and the seizure is, per se, neither a payment nor satisfaction absolute, but only sub modo. Yet from Clerk v. Withers, comes a progeny of dicta couched in the same general language. Parsons, Ch. J., in Ladd v. Blunt, 4 Mass. R. 403, puts it that when sufficient goods are seized the debtor is discharged, even if the sheriff waste the goods, &c. ; for, by lawful seizure the debtor has lost his property in the goods.” None of this was necessary, for he was merely examining whether a levy on land would satisfy the debt, and held it would not, and in such case, he concludes it is no satisfaction, because till the land is delivered to the plaintiff, the title of the defendant is not divested, and the judgment is unsatisfied. We have held the same thing. Shepard v. Rowe, 14 Wendell, 260, 262. And yet we have often taken it for granted that the sheriff may, nay must levy on land as well as goods ; Jackson ex dem. Sternberg v. Shaffer, 11 Johns. R. 513, 517 ; Jackson ex dem. Carman v. Rosevelt, 13 Johns. R. 97, 102 ; *498 and we have, in several cases, allowed him fees for such levy, which implies that we consider it an incipient execution of the process, the same as a levy on goods. Parsons v. Bowdoin, 17 Wendell, 14, 15, and the cases there cited. Are these cases all wrong ? If not, a levy on land is more than a levy on goods, for the lien of the judgment conspires with that of the execution. In neither case is the debtor’s property absolutely divested till a sale; but in both it is partially displaced, though the sheriff acquire no interest in the land. Take it that the sheriff holds a mere' naked power in respect to the land, like a tax collector ; Catlin v. Jackson, ex dem. Gratz, 8 Johns. R. 520, 546 ; take it that the power or levy dies with him, or expires when he goes out of office, or is gone with the return day of the fi.fa. according to the cases in North Carolina; Doe, ex dem. Barden v. M’Kinnie, 4 Hawks, 279; Frost v. Etheridge, 1 Dev. 30; Den, ex dem. Tayloe, v. Fen, 1 Dev. 295 ; Den, ex dem. Tarkinton, 2 *Dev. [ *499 ] Batt. 87, and the cases cited by Gaston, J. ; yet you have alien by virtue of the judgment, surer in its effect than can arise from a mere levy on personal property ; and the distinction between the effect of discharging the lien in one or the other case, is merely technical. The goods levied on are a pledge for the debt, like a distress for rent in the hands of the landlord. That too works a suspension of all other remedy ; and may mature into a satisfaction. Vid. Wallis v. Savill, 2 Lutw. 1532. Hutchins v. Chambers, 1 Burr. 589. Bradby on Distresses, 130. A voluntary relinquishment of a sufficient distress would probably bar all further remedy by the act of the landlord, if not an action for the rent. And yet in almost every other point of view, the goods are regarded as no more than a collateral security.
Our eases appear to have drawn various consequences from Clerk v. Withers ; but I apprehend none of them admit the levy to operate as an absolute satisfaction. Reed v. Pruyn, 7 Johns. R. 426, was where the sheriff had paid the money. The court there cite Ward v. Hauchet, 1 Keb. 551, to show that the sheriff taking security for the debt, would discharge it: but in that case the plaintiff consented to the sheriff taking a bond. Nothing is said of a levy, and the rule there, as stated by counsel and agreed to by the court, is clearly not law. Merely taking security by bond will not discharge a judgment, though I admit that security taken in due course of execution, even without the plaintiff’s assent, will have the same effect as a levy — for instance, if it be taken *by way of a receiptor or by bond in place of the goods seized. Bank of Orange County v. Wakeman, 1 Cowen, 46, 7, and note. In Hoyt v. Hudson, 12 Johns. R. 207, the action was against the constable, who had seized goods and taken a receiptor. It was held that he could not levy again. That was like a sheriff suffering a voluntary escape. He cannot make recaption of his own head. In Ex parte Lawrence, 4 Cowen, 417, the levy on personal property still pending was held to take away the *499 lien of the judgment on the debtor’s real estate, and so the creditor could not redeem. The court.say the levy extinguished the judgment, [ *500 j citing the previous cases. In Jackson, ex dem. * Merritt v. Bowen, 7 Cowen, 13, the same point was decided ; the fi. fa. having been returned by direction of the creditor, and the levy thus discharged. Cornell v. Cook, id. 310, 315, is a mere recognition of the general doctrine by Savage, Ch. J. In the case of Wood v. Torrey, 6 Wendell, 562, the assignee of the judgment himself stood receiptor to the sheriff; yet he was allowed to make a second levy as against the defendant, because the- latter had caused the eloignment of the goods. But the court stayed the plaintiff on the application of one who had purchased the debtor’s land pending the levy on his personalty. Savage, Ch. J. cites the previous cases. In Ontario Bank v. Hallett, 8 Cowen, 192, it was also said that where the debtor himself defeats the first levy, another may be made. In that case, the judge went still farther in favor of the creditor. He said that a levy on the personal property of a guarantor is not a satisfaction of the debt due from the principal; and in Dyke v. Mercer, 2 Show. 394, it was adjudged that in such case, even payment of the money to the sheriff by a co-obligor was no safisfaction of the plaintiff as against the other obligor, for the sheriff might prove insolvent. But that was probably more than would be held at this day. An actual payment to the sheriff would probably be deemed a payment of the debt. The judge seems to concede this in Ontario Bank v. Hallett. That a payment to the sheriff is a good discharge of the immediate defendant was agreed both in Dyke v. Mercer, and Clerk v. Withers.
Thus, after all that has been said, we are to this day destitute of any direct adjudication that levy alone absolutely extinguishes or satisfies a judgment, as payment of the money would do. The levy of a single sheep, according to the dicta in Salkeld and Raymond, would satisfy a thousand pounds; and so perhaps of several detached dicta since that time. The gross absurdity of such a rule has led the judges, in all the later cases, to speak in more qualified terms ; such as that the goods must be of sufficient value, to satisfy the debt: and again, if the debtor eloign them, the levy is not a satisfaction. Nor do I believe any judge would, at the pre- [ *501 ] sent day, hold the plea in Croke to be more than a temporary bar of further execution; a mere ground for setting it aside on motion. Would the judgment for the defendant on that plea have barred an action of debt ? Might not the plaintiff have replied that the sheep sold for less than the judgment; and so recover the balance ? To an action of debt, the plea could have been nothing more in effect than a plea in abatement.
What then, after all, does the rule amount to ? Merely this: that the levy is a satisfaction sub modo. It may operate as a satisfaction, and must be fairly tried; but if it fail, in whole or in part, without any fault of the *501 plaintiff, he may go to his farther execution. He must fairly exhaust the first; and while this is going on, he can neither sue on the judgment, nor have another fi. fa., nor a ca. sa., nor can he redeem lands sold on another judgment. The plaintiff may, by tampering with the levy himself, lose his debt — as if he release property from arrest, which is sufficient to pay the debt. Even a distress which answers only part of the rent may generally be followed up by distraining again ; and might, I apprehend, by the common law. Vid. Bradby, and cases before cited in connection with him. In the still higher remedy by capias ad satisfaciendum, if the sheriff allowed the debtor to escape without the previous consent of the plaintiff, the latter might always, even before the declaratory statute of 8 and 9 Wm. 3, sue out a second ca. sa., though the sheriff could not retake on the first. Buxton v. Home, 1 Show. 174. Scott v. Peacock, 1 Salk. 271. And, on an escape against the will of the sheriff, either he or the plaintiff might retake. Alanson v. Butler, Sid. 330. Thus it will be seen the law has never adopted a harsh and blind rule, which will not yield to diversities and exigencies as they arise. Indeed there are so many ways invented by which goods may be got from the sheriff, sometimes by fraudulent claims, sometimes by prior liens, and even by his own negligence, that it behooves the courts to look into the rule now urged upon us as working by a sort of magic to cut a man off from his debt without the show or pretence of satisfaction. It is severe enough on plaintiffs who are without fault, to require that they get their executions Returned, without their debts being [ *502 ] held satisfied, because in the mean time the sheriff may have relinquished goods levied on. Doing so, the debtor has them to himself. In the case at bar, Burke had his colts again. Sometimes goods are so covered up by previous liens that it does no good to sell them, for none will buy. And shall the party, in such case, be driven to an attempt which must be idle ? Why may he not have his execution returned and resort to his creditor’s bill ? Indeed we have been obliged to hold that he may. Evans v. Parker, 20 Wendell, 622. Who will say that if the plaintiff happen to commit a mistake, and relinquish a levy upon a modicum, he must therefore lose his debt ? If he have fairly and in good faith closed his proceeding on execution, why not give him his ulterior remedy ?
But was not the levy in question void by reason of Stevenson’s non-age ? It appears that the town had elected him to the office of constable; and the justice had placed the execution in his hands. The plaintiffs then directed him to go on and collect as soon as might be. He levied ; but becoming satisfied that he had already committed a trespass, he was too prudent to go any farther; he returned the process to the justice, and gave up the colts to the defendant. The latter offered to pay him the money, but he would not take it. Now it is said he was an officer de facto ; and that his acts bound the defendant and the plaintiff. He may indeed have been an officer defae-. *502 to, People ex rel. Dobbs, v. Dean, 3 Wendell, 438 ; and had he gone on and collected the money, the defendant never disturbing him, nor the creditors in their possession of it, the thing would have been well enough. But his acts were valid only in respect to such third persons as were affected by them. Viner’s Abr. tit. Officer, (G. 3) ; id. (G. 4), vol. 16, p. 113, Lond. ed. 8vo, 1793. 1 know the cases have gone a great way. But they have stopped with preventing mischief to such as confide in officers who are acting without right. People, ex rel. Bush, v. Collins, 7 Johns. R. 549. The officer himself cannot be protected, except in some such case as Wood v. Peake, 8 Johns. R. 69. There he was appointed by the judicial [ *503 ] act of magistrates having jurisdiction *in cases of vacancies happening ; and it was held that the officer’s power could not be impeached collaterally by showing that a vacancy had happened. It was doubtless a case for certiorari only. Though the case being full was a jurisdictional objection, yet the question was one on which they had power to pass judicially. There are many such cases. Other diversities arise in the progress of the question. Thus, a town having elected an infant to the office of hogreeve, were said to be estopped to deny that he was of age. Woodbury, J. in Bath v. Haverhill, 2 N. Hamp. R. 555. The infant afterwards became a pauper, and the town sought to evade the consequence of the election, which was to give him a settlement, because he was a minor. Beside considerable doubt was entertained by the learned court, whether he were not eligible notwithstanding his infancy. But it by no means follows from any decided case, that, where a town elects a minor to an office, and he accepts it, and presumes to act in the face of a public statute, he can protect himself when sued as a trespasser. The town had no jurisdiction, nor does it act judicially. Vide 1 R. S. 106, 2d ed. § 1. The minor knew it. Suppose a justice, who is a disqualified tavern keeper, to render a judgment; could he protect himself against trespass for issuing an execution ? Could he recover fees ? But we need not pursue the distinction on principle. It is very sensibly settled by a series of cases in Pennsylvania, where most of the authorities have been examined. The result was stated in Riddle v. Bedford, 7 Serg. & Rawle, 386, 392. “The sound distinction,” says Duncan, J., “ is, that the office is void as to the officer himself; but valid as to Strangers.” The same distinction has been since recognized there in several cases. Parker v. Luffborough, 10 Serg. & Rawle, 249. Keyser v. M' Kissan, 2 Rawle, 139, 140. In Fowler v. Beebe, 9 Mass. R. 231, the court held that they would not try whether the sheriff de facto who served the original writ was so de jure. But Parsons, Ch. J. admitted that an action against the sheriff would raise a question on the legality of [ *504 ] his commission. The distinction was, in *Pennsylvania, extended to a mere omission of the officer to take the oath. And see Colburn v. Ellis, 5 Mass. R. 427.
*504 The result is plain. Stevenson was a trespasser. And, after the plaintiffs in the execution had been informed that he was an infant, they, by urging him on, would have brought themselves to participate in his peril. Then, taking the rule of satisfaction by levy in all its general strictness, as contended for by the defendant’3 counsel, what were the constable and plaintiffs to do ? Most obviously, they stood within the exception to the rule. Had the money been collected by a sale of the colts, Burke might have recovered their value in trespass or trover ; and in this might, most probably, have joined the plaintiffs, if he could show notice to them of their constable’s disaability. Such a circuity would have clearly nullified the credit, and brought down a new execution on the defendant. The upshot is, that this young man prudently chose to do before hand what the law would have forced him to do in another form ; and, however stringent the rule of satisfaction by levy, this case made a plain exception. Suppose the sheriff to make an irregular arrest even on a ea sa; is the plaintiff to be cut off from his debt because the officer lets the man go ? Goods of a third person are levied on and discharged ; no one would pretend that this discharges the debt ? There can be no doubt that.in such and the like cases the creditor may relinquish the arrest, or levy without prejudice.
It follows that the second execution in the case at bar was regular. The sale of wheat on the ground, under that execution, was not impeached. Evidence was given of a disproportion in value between the wheat as it turned out and the sum due on the execution. Admit this, and that the plaintiffs directed the constable to sell it in preference to other property; Burke should have paid the debt. The sacrifice, if it be one, seems to have been of his own seeking. He sought to avail himself of a supposed technical advantage, derivable from the levy on the colts.
The verdict should, therefore, be set aside ; at least so modified as to find the property of the wheat in the plaintiffs.
But it appears to me that the proof was quite satisfactory in fa- [ *505 ] vor of the plaintiff, on the issue of non cepit. The defendant was found in the field near his house, engaged in putting up sheaves while others were cutting the wheat; that very wheat which had been brought into dispute between him and the plaintiff, by the sale. It was on the defendant’s own farm ; and he did not undertake by any evidence to distinguish it from the wheat sold and that described in the declaration. On being asked why he was cutting Green’s wheat, and if he was going on to cut the residue ? he admitted that it was his purpose to go on, and bade defiance to the sheriff, whose errand he no doubt perfectly understood. Morally and legally, his intefererice with the plaintiff’s property was as obvious as if he had removed the wheat into his barn. If his denial to Merritt that he set the hands at work, had any foundation in truth, he might easily have shown the fact by calling some of them. But it seems like asking quite too much, when he requested the jury *505 to say, of wheat which the sheriff had not power to take from him, that he was prepared, on the other hand, to stand looking tamely on, and see it harvested and carried away as the property of strangers with whom he had no connection.
Perhaps, from what the defendant said to Merritt, one of the witnesses, it may he inferred that his neighbors or others had volunteered to rescue the wheat. But he was present giving countenance to their acts, and aiding in the harvest. The rule is well settled that not only those who do the immediate act, but all persons who direct or assist are liable as principals for the entire trespass. 2 Leigh’s N. P. 1407, 1408, Am. ed. 1889, and books there cited. Nay, where a trespass is done for another’s benefit, his bare subsequent agreement to it amounts to an original direction or command. 2 Wheat. Selw. N. P. 1344, Am. Ed. 1839, and the looks there cited. If either of those views be applicable, he was a wrongful taker of the whole, within the issue of non cepit.
The purpose of the hands and of Burke being present in the [ *506 ] wheat field, and his aid and consent, I should suppose *could not he Avell misapplied. At any rate Ave prefer that the cause should be re-tried, on the views uoav taken, which indeed do not differ from those of the learned judge.
New trial granted; costs to abide the event.