# SUPERIOR COURT.

## FALL SESSIONS.

## 1877.

SAMUEL HARGADINE, Sheriff, *v.* PRESSLY FORD.

In an action of trover by a sheriff against a tort-feasor for the taking and conversion of goods levied on by him under an execution in his hands, and on which he afterward by mistake returned the goods as sold by him, his return may be contradicted by him, and he is not estopped or concluded by it from proving the taking and conversion of the goods. For his return to the writ in such a case as a matter of record in the court does not import absolute verity, but is only *prima facie* true and may be contradicted.

The usual inventory and appraisement made by a sheriff in levying a *fi. fa.* execution on goods and chattels constitutes such a constructive seizure and possession of them by him as sheriff from that time, and before any appraisement has been made of them by two sworn appraisers afterward, as to give him such a special property in them as will enable him to maintain an action of trover against a tort-feasor for the tortious taking and conversion of them between that time and the appraisement of them made afterward by the two sworn appraisers. Or, in other words, that the inventory and appraisement of them made by the sheriff in the first instance constitutes a sufficient levy on them when there has been no actual seizure of them by him to give him such a special property in them before the appraisement of them by the two sworn appraisers afterward.

THIS was an action of trover by the plaintiff, as sheriff of Kent County, against the defendant for the undivided half part of a crop of wheat, the share of John W. Hubbard, as tenant, already harvested on the premises rented by him, and levied on by the sheriff under a *fi. fa.* execution in his hands against him, and carried away and converted to his use by Pressly Ford, the

380

defendant in the suit, before the day advertised for the sale under the process with the privity and consent of the defendant in it.

The execution was issued on the 9th day of July, 1872, and the first entry indorsed on the back of it in the handwriting of the sheriff's deputy was, "An inventory and appraisement of the goods and chattels of John W. Hubbard, seized and taken in execution by virtue of the annexed writ at the suit of Alexander Peterson's executor, this 9th day of July, A. D. 1872, by Samuel Hargadine, Sheriff." Then followed a schedule of the same with their respective valuations set opposite in figures, amounting in the aggregate to two thousand one hundred and forty-three dollars, in which was included "lot of wheat in stock, crop of 1872, valued at three hundred dollars," and which was followed with the signatures of the appraisers at said prices, dated August 31st, 1872; and this was followed by the sheriff's return indorsed on the execution, "Levied on goods and chattels as per inventory and appraisement annexed, and on the 18th day of September, A. D. 1872, after due notice given as by law required, the said goods and chattels sold for the sum of eight hundred and seventy-three dollars and thirty-five cents."

John Mustard, the first witness called for the plaintiff, was asked by the counsel for the defendant if he was not one of the sureties in Sheriff Hargadine's official recognizance taken on the 23d day of April, 1872, and before this suit was brought, which had been pending for several terms, and on his answering the question that he was, he objected to his competency as a witness on that ground, for which he referred to the general rule of evidence which renders any one incompetent to testify who is interested in or may gain or lose by the result of the case.

*The Court*, however, overruled the objection, after argument by counsel on both sides.

The counsel for the plaintiff was then proceeding to prove by the witness the carrying away of the wheat from the premises after the issuing of the execution and it had been levied on by the sheriff, when

*H. Penington*, for the defendant, raised the further objection that by the sheriff's return it appeared that the wheat was both

levied on and sold by the sheriff pursuant to due notice given as required by law, with the other goods and chattels of the defendant in the execution levied upon, on the day advertised for the sale, the 18th of September, 1872, and if the object of the testimony was to contradict that return of the sheriff in any substantial particular, it was not admissible, because the sheriff himself is the plaintiff in the suit and is concluded and estopped from impeaching or denying his own return when he is a party to the action. (3 *Bac. Abr.* 553; *Purrington* v. *Loring,* 7 *Mass.* 388; *Townsend* v. *Olin,* 5 *Wend.* 207; *Armstrong* v. *Garrow,* 6 *Cow.* 465; *Gardner* v. *Hosmer,* 6 *Mass.* 325; 2 *Stark Ev.* 1017; 2 *Phil. on Ev.* 225.)

*J. R. Nicholson,* for the plaintiff: A sheriff's return is not held to be conclusive because it is a judicial record and imports absolute verity, for it is not such a record, but simply because of its legal effect as between the parties and privies to it. (*Wats on the Law of Sheriff,* 7 *Law Libr.* 120.) But in other cases it is only *prima facie* or presumed to be true and the contrary when it is untrue may be shown. *Bailey* v. *Capelle,* 1 *Harr.* 449; *Barham* v. *Massey,* 5 *Ire.* 192; *Patterson* v. *Britt,* 11 *Ire.* 383; *Simpson* v. *Hiatt,* 13 *Ire.* 470; *Boynton* v. *Willard,* 10 *Pick.* 165; *American Bank* v. *Dolittle,* 14 *Pick.* 123; *Diller* v. *Roberts,* 13 S. & R. 60; *King* v. *Russell,* 40 *Texas* 125; *Ayres* v. *Duprey,* 27 *Texas* 593.

*Massey,* for the plaintiff: There was in this case a tort committed by the defendant, who was a stranger and no party to the judgment or the execution process or official proceedings in the hands of the sheriff, against the right and property of that officer in the wheat which had been levied on by him. The general principle of law is well settled and will not be disputed by us, that when the action is against the sheriff, as for a false return to a writ in an action against him for it by the plaintiff in it, or the action is against any one claiming by or under his return, the sheriff or such claimant cannot contradict the return but is absolutely bound and concluded by it. And in such a case there are considerations and obligations of good faith and

public credit which require this for the protection and security of those whose legal rights are dependent upon them. *Baker* v. *McDuffie*, 23 *Wend*. 389. But for a mere tort-feasor or wrong-doer who volunteers without any pretext or color of right whatever to seize and carry away property levied on by such an officer, it has no consideration and no application whatever. And, therefore, in all other cases than those first alluded to the return of a sheriff to a judicial writ is but *prima facie* proof of the allegations contained in it, and may be contradicted and corrected by evidence to the contrary when erroneous and mistaken. And more particularly is such the rule when the defendant, as in this case, was a mere trespasser or tort-feasor and acquired no right or title whatever to the wheat under the return as against the sheriff, the plaintiff in the action. In the case which he had just cited from 23 *Wend*. 289, the law on the subject is well and concisely stated in the syllabus of it. A sheriff is generally concluded by his return upon process from gainsaying its truth collaterally, but he is so concluded only when his return is set up by a party who may claim something under it; if others rely upon it as his admission it is but *prima facie* evidence and may be explained. And *Herman on Executions, sec.* 243, states it to the same effect. In certain cases a return is but *prima facie* evidence of the matter therein contained; in actions between third parties where the matters returned come collaterally in issue, and where the interests are not connected with the action in which the return was made; in actions of trover or trespass by an officer for goods levied upon by him, or for an injury thereto, his return is *prima facie* evidence of his levy and possession, but not conclusive in such a case.

*J. B. Penington*, for defendant : The sheriff's return is a part of the record of the court in this case, and he now asks to show that it is not true, or, in other words, to contradict it, and it is admitted that as a general rule that it cannot be done. It was contended on the other side, however, that the principle does not apply to a mere tort-feasor in an action against him by a sheriff for wrongfully taking away and converting to his own use the goods of another levied on by him, but that does not

appear in the case as thus far presented to the court, and if the
return of the sheriff is true it is a matter of impossibility that it
ever can appear to the court.    It therefore seemed on their part
to be begging the question itself.    He reviewed and commented
upon the authorities cited on the other side and contended that
this case differed from them all in the striking and unexampled
fact that in an action brought by the sheriff against an entire
stranger to the process to recover goods levied on by him, he has
at the very outset to contradict his own return upon it, and the
evidence of his own making, to maintain the action against him,
which he was well convinced could not be done.

*The Court:* If the controversy were between the sheriff and a
party or privy to the writ, his return which he proposes to con-
tradict, we should not admit the proof offered, for a return by
the sheriff on execution process is not to be contradicted by him
in an action against him by the plaintiff in the writ or by any
one claiming in privity with him.    And in all collateral pro-
ceedings the return is generally to be taken as absolutely true
also.    But this is not a case between the sheriff and a party to
the writ, nor between him and any other party who founds any
claim of title upon the writ and return ; but it is between the
sheriff and a tort-feasor who, it is alleged, took the goods levied
upon and converted them to his own use wrongfully.    It would
be, as we conceive, flagrantly unjust to aid the defendant in de-
feating this action by yielding to his objection that the return of
the sheriff estops him from proving that the goods converted by
the defendant were not in fact disposed of by the sale under the
writ ; and standing in this suit as he does, he ought not to be
allowed any advantage with respect to the return other than
that it is to be taken, even with reference to a mere wrong-doer
and a stranger to the writ, like any other mere admission, as
*prima facie* true, subject, however, to be rebutted by counter-
vailing evidence. The fact is, in this case the sheriff made a pal-
pable mistake in the return, all the goods levied on except the
wheat wrongfully carried away and converted by the defendant
before the day of sale having been sold by him at the sale.    We
cannot conceive that any violence will be done to the rules or

the law of evidence properly applicable in such a case as this by allowing him to do so. We, therefore, overrule the objection and admit the evidence offered. The return is but the certificate of an official and ministerial act performed by the sheriff out of court in obedience to the command of the writ, and although it is afterward transferred to and entered in the record of the case in the court, it has not in a case like this the peculiar sanctity attached to the pleadings and judicial proceedings transacted and recorded in it, and does not always, like them, import absolute verity.

The counsel for the plaintiff then proceeded and proved the taking and carrying away and sale by the defendant of two hundred and thirty-six bushels of the wheat for one dollar and sixty-two cents per bushel, and of fifty bushels of it to another purchaser, and that from one hundred and fifty to two hundred bushels of it was remaining in the defendant's granary which the sheriff afterward formally claimed and demanded of him by virtue of his levy on it, and which he refused to deliver to him or to let him have.

*H. Penington (John B. Penington* with him): There were two counts in the declaration both alleging that the plaintiff, the sheriff, was in possession of the wheat in question on the 9th day of July, 1872, which he claimed to be by virtue of his levy upon it merely, for it was not pretended that he had ever taken or had it in his actual possession or custody under the executions or either of them. But when such is the case, and there is no actual seizure or taking of the goods into his possession under the execution by a sheriff, the levy dates only from the inventory and appraisement of the goods under it, which in this case was on the 28th day of July, 1872. The wheat in question, however, as the proof shows, was taken and carried away from the premises by the defendant prior to that time, to wit, on the 24th and 26th days of that month. *Farmers' Bank* v. *Massey,* 1 *Harr.* 186. The inventory and appraisement of the goods is the levy. *Sipple* v. *Scotten,* 1 *Harr.* 107 ; 2 *Sel. N. P.* 1362. The sheriff must have made an actual levy on the

wheat and have had the actual possession of it before and at the time of its conversion to maintain an action of trover for it. 12 *Johns.* 402. And the relation of the lien back to the time when the execution was delivered, if levied in sixty days afterward, does not remedy his defect in an action of trover for the conversion of them prior to the levy. To recover in this action the plaintiff must have had property in the goods and the right to the immediate possession of them at the time of their conversion, and the levy must have been complete also at that time. 9 *Bac. Abr.* 646. The inventory and appraisement of the goods under the execution constituted the levy in this case, as they were none of them seized or taken into possession by the sheriff until several weeks after the execution had come to his hands, and after the wheat had been carried away by the defendant. *Layton & Sipple* v. *Steel*, 3 *Harr.* 512. And though the writ binds the goods from the time it is delivered to the sheriff it gives him no property in them until it is levied on them. 12 *Law Libr.* 88; *Herm. on Execu.*, sec. 186; 30 *Ill.* 446; 2 *Hil. on Torts* 200 ; 2 *T. R.* 755. If goods be moved on premises after execution delivered to the sheriff but before actual levy, and is afterward levied on them, they are subject to rent in preference to the execution. *Shuster* v. *Robinson*, 3 *Harr.* 50 ; 19 *Pick.* 364. And as the inventory and appraisement was the only levy in this case and constituted an essential fact to establish the plaintiff's right to maintain this action, it was especially incumbent upon him to prove when it was made, and clearly that it was made before the alleged conversion of the wheat.

The defendant in the executions must have had a sole property, and not an undivided interest, in the goods to give the sheriff a property in them by levying them upon the goods. 1 *Ch. Pl.* 155, *Rev. Code* 735.

*Massey*, for the plaintiff: The practice of the sheriff in all the counties of this State had long been when levying an execution on goods at once to make out what they term an inventory and appraisement of the goods, consisting of a written statement of the several articles with their own estimate of the value of each

of them respectively in dollars and cents, and entered immediately following it in the statement, and this, as soon as it is completed, they enfold and preserve with the writ itself from that time, and which they uniformly call and consider their levy of the execution on the goods named in it, and their only levy on them, except when they actually seize and take them into their possession and custody under them for safe-keeping when deemed necessary or advisable. Afterward, and before the day of sale and the return of the writ at the return term of the court, they cause a further appraisement of the goods and chattels levied on as set forth in the inventory before made by them to be made by two impartial and sworn men of the county and signed by them and entered in the inventory, which is attached to the writ and made a part of the sheriff's return to it. And this is uniformly done afterward when there is convenient time for it, and which could seldom if ever be done at the same time, particularly when great promptitude and dispatch should be required in levying an execution. And was it not that inventory and appraisement always made by the sheriff himself in the first instance that is referred to by the court in all the cases cited on the other side from *Harrington's Reports?* Can it be necessary that an appraisement of the latter description should be made to constitute and complete a mere levy of the execution by the officer on the goods? And could the court have possibly intended that? It has never been so understood in any county of the State, for if that be the meaning of the decisions, he felt warranted in saying, from what he knew of the practice in all of them, there had not been a complete and valid levy of an execution on goods made by a sheriff in either of them since those decisions were announced. But if that be the proper interpretation of them, an actual seizure of the goods and taking them into his official custody under the execution and making an inventory of them by the sheriff would not constitute a levy.

But in the case cited from 1 *Harr.* 107, the text does not fully support the *syllabus* of it. The language of the court is not so strong, direct, and positive. It is this: "In England seizure and possession is the only levy, but here the practice is not to take the goods into actual possession. Is not therefore

an inventory and appraisement the substitute for the levy? It would seem reasonable." But which or what appraisement? The practice of the sheriffs he had already referred to was as common then as now, and was as well known to the court and bar then as now. And the sheriff or his deputy always did make the only inventory of the goods made in any case, with his own appraisement of the goods, as he had before stated, and this was always done when the levy was made by him as a part of it, and when no actual seizure of the goods was made was the only levy made, and stood as the substitute for the levy by seizure and possession, as it might well be called under our practice. And it was doubtless to that long-established practice in the sheriff's office, and that inventory and apprisement so made by him, the court referred in all the decisions which had been cited on the other side. The inventory and appraisement in this case, attached to each of the three writs in the hands of the sheriff, recites that it is "an inventory and appraisement of the goods and chattels of John W. Hubbard seized and taken in execution by virtue of the annexed writ at the suit of Alexander Peterson's executors, this 9th day of July, A. D. 1872, by Samuel Hargadine, sheriff, to wit:" then follows a specification of the several articles with his valuation or appraisement of them respectively stated in dollars and cents in figures, and among them a lot of wheat in shock crop of 1872, appraised at three hundred dollars, the appraised value of all of them aggregating the sum of over two thousand dollars, and at the foot of it on the left hand side and of the date of August 31st, 1872, these words are added: "Appraisement by J. C. Pennewill, Joseph McDaniel, Jr." the signatures being in the proper handwriting of each of them respectively. The original of this inventory and appraisement was attached to the writ and duly returned to court, is *prima facie* true, and has not been denied or contradicted by any evidence whatever. 1 *Houst.* 350; 5 *Harr.* 388; 6 *Del. Laws* 656, 447; *Herm. on Execu.*, sec. 161; 1 *Spencer's Rep.* 57; 23 *Wend.* 490; 2 *Gill* 152; 3 *Harr.* 512; *Rev. Code* 515; 3 *Md.* 147.

But even if this constitutes a good ground of objection to the action for so much of the wheat as was taken and converted by

the defendant prior to the 28th of August, 1872, it could be no defense to the action for the one hundred and fifty or two hundred bushels of it which remained in his granary, and formally demanded of him after that time by the plaintiff and which he expressly refused to deliver to him.

*The Court, Wootten, J., charged the jury:* This is an action of trover sounding in damages, brought on the 24th of October, 1872, by Samuel Hargadine, who was then sheriff of Kent County, against Pressly Ford, the defendant.

On the 9th day of July, 1872, several executions were issued at the suit of the executors of Alexander Peterson against John W. Hubbard and were placed in the hands of the sheriff, who is the plaintiff in this suit, and who on the same day made what he characterized as an *inventory and appraisement* of the goods and chattels of John W. Hubbard, the defendant in the several writs of *fieri facias*. The certificate which precedes the inventory is in the following language : " An inventory and appraisement of the goods and chattels of John W. Hubbard, seized and taken in execution by virtue of the annexed writ, at the suit of the executors of Alexander Peterson, this the 9th day of July, A. D. 1872, by Samuel Hargadine, sheriff." The inventory contains a list of the property which was then seized and taken in execution by the sheriff, among which was a " lot of wheat in the shock," which now constitutes the subject-matter of controversy. The plaintiff is seeking to recover the *value* of one-half of the wheat found on the premises, being the share of the defendant as tenant of the land on which it was grown.

It is claimed for the plaintiff that the certificate and inventory made by him on the 9th day of July, 1872, under and by virtue of the several writs of *fi. fa.*, constituted either such an actual or constructive seizure of the goods and chattels of the defendant in the several writs as to give him, the plaintiff, such a special property in the wheat in controversy as entitles him to maintain his action and to recover the value of the wheat alleged to have been taken and removed from the premises on which it was grown, and where it was when the inventory and alleged levy

were made, being one-half of the crop of 1872; this is claimed by the plaintiff as his right of action as against a tort-feasor, though there was no appraisement made by two appraisers until the 31st of August of the same year.

On the part of the defendant it is insisted that the plaintiff did not and could not acquire such a special property in the wheat in controversy as would enable him to maintain an action of trover for damages, although there may have been a conversion by the defendant, without having made an inventory and appraisement by two sworn appraisers, which appraisement he insists must have been made before the alleged conversion of the property by the defendant, denying that the sheriff's certificate and inventory constitute such a seizure as will entitle him to recover either the appraised value or such value as may have been proved by the witnesses. This is the great and important question in the case now before us, and perhaps I might say the only one in reference to which it is our duty to instruct you; there are, however, some less important ones upon which we have been requested to charge you about which I may have something to say before I am done.

The sheriff received the several executions on the 9th day of July, 1872, and made his inventory and appraisement on the same day, and his return shows that on the 18th day of September following he sold the property "as per inventory and appraisement." But it appears from the evidence that the wheat was not sold for the reason asserted by the plaintiff, that after the seizure and making his inventory and appraisement the defendant tortiously took and possessed himself of it, and afterward converted it to his own use by selling and otherwise disposing of it. This, gentlemen, is a question of fact for your consideration and determination from all the evidence before you. We feel it our duty, however, to say to you that if you are satisfied from the evidence, and you are to consider nothing else, that Ford, the defendant, admitted that he sold the wheat in controversy to Stockly, it is evidence of conversion by him and he is concluded by his admission to the extent of the quantity sold by him to Stockly. And we further say to you that if you are satisfied from the evidence that the sheriff made a demand

upon Ford, the defendant, for the wheat or such part thereof as had not been sold or otherwise disposed of and which still remained in his possession, and that he asserted his right and title to it and refused to surrender or deliver it to the plaintiff, that such a claim of right and title and refusal to surrender or deliver it to the sheriff is evidence of conversion and renders him liable to the plaintiff in this action.

I have said to you that the great and important question in this case is whether the sheriff by his certificate and inventory acquired such a special property in the goods so inventoried by him as to entitle him to recover in this suit. We are of opinion and say to you that the sheriff's certificate and inventory purporting to have been made on the 9th day of July, 1872, constituted such a seizure and levy, and gave him such a special property in the wheat in question as to entitle him to recover, provided the tortious taking and conversion are proved to your satisfaction. If, therefore, you are satisfied from the evidence that there was a tortious taking and conversion by Ford, the defendant, after the 9th of July, 1872, and previous to the commencement of this suit on the 24th of October of the same year, the plaintiff is entitled to recover, and your verdict should be for the amount of such damages as in your judgment was actually sustained, and the measure of the damages is the value of the wheat as proved by the witnesses, and not the amount of the inventoried or appraised value. This appraised value was three hundred dollars, and the value, as proved by Stockly, the purchaser of a portion of it, was one dollar and sixty-two cents per bushel ; he paid that price for two hundred and thirty-six bushels; and fifty bushels were sold to defendant's brother, and Mr. Voshell, a witness, estimated that portion which was remaining in defendant's granary at from one hundred and fifty to two hundred bushels, making in the aggregate four hundred and thirty-six bushels, which at one dollar and sixty-two cents per bushel would amount to seven hundred and six dollars and thirty-two cents, which is the amount claimed by the plaintiff; and if he is entitled to your verdict, he is entitled to recover the full amount of injury sustained as against a tort-feasor, which would be the value of the property tortiously taken and

converted. But, gentlemen, if you are not satisfied from the evidence that there was such a tortious taking and conversion by the defendant, or that there was no valid levy on the wheat before the taking and conversion by the defendant, your verdict should be for him, which would be not guilty. If your verdict, however, should be for the plaintiff, it should be guilty, and that you assess his damages at such amount as you may agree upon as the value of the wheat taken and converted by the defendant, that is, the value proved by the witnesses.

If you should be satisfied from the evidence that the sheriff, who is the plaintiff in this suit, made a levy on the goods and chattels in question under the several writs of *fieri facias* on the 9th day of July, 1872, including that portion of the wheat which was remaining in the possession of the defendant at the time of the demand made upon him by the sheriff, or at any other time heretofore and after the 9th day of July, 1872, such levy would be a sufficient seizure to entitle the plaintiff to recover in this action, and the measure of damages will be the value of that portion of the wheat as was so remaining in the possession of the defendant; and we also say to you, that if you should be satisfied that the sheriff, after he had made his inventory on the 9th day of July, 1872, made a demand on the defendant for that portion of the wheat which was still remaining in his possession, and that he asserted a right and title to it and refused to surrender and deliver it to the plaintiff, such claim of right and title to it and refusal to surrender and deliver it to the palintiff, amounted to a conversion by him, and entitles the plaintiff to recover its value in this action. As to the evidence, we can only say to you if it is contradictory or conflicting, you must, if you can, harmonize it ; but if you cannot so as to believe it all, you must credit that which you think most worthy of it, and reject such as you may believe to be least entitled to credit. You are the judges, and the sole judges, of the evidence, and after carefully considering it in all its aspects and bearings, your duty is to give it such credit and weight as you in your judgment believe it to be entitled to.

And now, gentlemen, I have but little more to say to you, having as briefly as I could, consistently with the importance of

the case, directed your attention to all the questions of law which have arisen and been presented to us, and which must govern you in your deliberations, as the law of the case, so far as it is properly applicable.

If you shall be satisfied from all the evidence you have that there was a proper and legal seizure and levy upon the wheat in question before the alleged taking and conversion by the defendant, the plaintiff is entitled to your verdict, and the measure of damages is the value of the wheat as proved by the witnesses; and if your verdict should be for the plaintiff, it should be guilty, and that you assess his damages at the amount you may agree upon as the value of the wheat with interest. If you should be of opinion, however, that there was no sufficient levy, or that there was no tortious taking and conversion by the defendant, he will be entitled to your verdict, which would be not guilty.

The statutory law of the State does not require an appraisement by two persons selected and sworn by the sheriff, except in cases in which the sheriff's return is that the goods remain unsold, and the reason for requiring it in such cases I apprehend is very obvious. A levy upon goods and chattels retains its lien for three years as against all subsequent levies or liens, and longer as against the defendant, and therefore it is necessary that the appraisement of them in such case should be made by others than the sheriff himself, that is to say by two disinterested and sworn appraisers, and who would also furnish additional and better witnesses to the identity as well as the value of the goods.

*Comegys, C. J.*, after the jury had left the court-room, took occasion to state that he did not concur with the other members of the court in the charge just delivered to the jury in the case.